# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TELIGENT, INC., *et al.*,[1] | Case No. 21-11332 (___) |
| Debtors. | (Joint Administration Requested) |

## APPLICATION OF THE DEBTORS FOR ENTRY OF ORDER APPOINTING EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF PETITION DATE

The above-captioned affiliated debtors and debtors in possession (collectively, the "Debtors") hereby submit this application (this "Section 156(c) Application"), pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), appointing Epiq Corporate Restructuring, LLC ("Epiq") as the claims and noticing agent in the Debtors' chapter 11 cases effective as of the Petition Date (as defined below). In support of this Section 156(c) Application, the Debtors rely upon the *Declaration of Vladimir Kasparov in Support of Chapter 11 Petitions and First-Day Motions* (the "First Day Declaration"),[2] which was filed with the Court concurrently herewith, and the *Declaration of Brian Hunt in Support of Application of Debtors for Entry of Order Appointing Epiq Corporate*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Teligent, Inc. (5758); Igen, Inc. (7443); Teligent Pharma, Inc. (1639); and TELIP LLC (8395).  The Debtors' corporate headquarters is located at 33 Wood Ave, 7th Floor, Iselin, NJ 08830.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

*Restructuring, LLC as Claims and Noticing Agent Effective as of Petition Date* (the "<u>Hunt Declaration</u>"), a copy of which is attached hereto as <u>Exhibit B</u>.  In further support of this Section 156(c) Application, the Debtors respectfully state as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), the Debtors consent to the entry of a final order by the Court in connection with this Section 156(c) Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief requested herein are 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002, Local Rule 2002-1(f), and the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, instituted by the Office of the Clerk of the Bankruptcy Court (the "<u>Clerk</u>") on February 1, 2012 (the "<u>Claims Agent Protocol</u>").

## BACKGROUND

3.      On the date hereof (the "<u>Petition Date</u>"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "<u>Chapter 11 Cases</u>"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official

committees have been appointed in the Chapter 11 Cases and no request has been made for the appointment of a trustee or an examiner.

4.    Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the First Day Declaration.

## RELIEF REQUESTED

5.    By this Section 156(c) Application, the Debtors seek entry of the Order appointing Epiq to act as the claims and noticing agent in the Chapter 11 Cases (the "Claims and Noticing Agent") to assume full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in the Chapter 11 Cases effective as of the Petition Date.  The terms of Epiq's proposed retention are set forth in that certain Standard Services Agreement between Epiq and the Debtors, dated as of September 21, 2021 (the "Engagement Agreement"),[3] a copy of which is attached hereto as Exhibit C. Notwithstanding the terms of the Engagement Agreement, the Debtors are seeking to retain Epiq solely on the terms set forth in this Section 156(c) Application and the Order.

6.    By separate application, the Debtors will seek authorization to retain and employ Epiq as administrative advisor in the Chapter 11 Cases, pursuant to section 327(a) of the Bankruptcy Code, as the administration of the Chapter 11 Cases may require Epiq to perform duties outside the scope of 28 U.S.C. § 156(c).

## EPIQ'S QUALIFICATIONS AND NEED FOR EPIQ'S SERVICES

7.    Epiq is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other

---

[3]  Epiq has agreed to provide claims and noticing services to the Debtors at the rates stated on the pricing schedule attached to the Engagement Agreement.  Epiq may provide such services at the same rates to counsel for any official committee appointed in the Chapter 11 Cases, and any other party in interest upon request.

27430189.9

administrative aspects of chapter 11 cases. Epiq has acted as the claims and noticing agent in numerous recent cases of varying size and complexity, including a number of recent cases filed in this District.[4]

8.      The appointment of Epiq as the Claims and Noticing Agent in the Chapter 11 Cases will expedite the distribution of notices and the processing of claims, facilitate other administrative aspects of the Chapter 11 Cases, and relieve the Clerk of these administrative burdens. The Debtors believe that the appointment of Epiq as the Claims and Noticing Agent will thus serve to maximize the value of the Debtors' estates for all stakeholders.

## SCOPE OF SERVICES

9.      This Section 156(c) Application pertains only to the services to be performed by Epiq under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f). Any services to be performed by Epiq that are set forth in the Engagement Agreement but outside of the scope of 28 U.S.C. § 156(c) are not covered by this Section 156(c) Application or by the Order. Specifically, Epiq will perform the following tasks in its role as the Claims and Noticing Agent, as well as all quality control relating thereto (collectively, the "Claims and Noticing Services"), to the extent requested by the Debtors:

    a.      Prepare and serve required notices and documents in the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including, if applicable, (i) notice of the commencement of the Chapter 11 Cases and

---

[4] *See, e.g.*, *In re Alamo Drafthouse Cinemas Holdings, LLC*, Case No. 21-10474 (MFW) (Bankr. D. Del. Mar. 4, 2021); *In re Town Sports International, LLC,* Case No. 20-12168 (CSS) (Bankr. D. Del. Sept 14, 2020); *In re Energy Alloys Holdings, LLC,* Case No. 20-12088 (MFW) (Bankr. D. Del. Sep. 9, 2020); *In re Quorum Health Corporation,* Case No. 20-10766 (KBO) (Bankr. D. Del. Apr 07, 2020)*; In re Earth Fare, Inc.,* Case No. 20-10256, (KBO) (Bankr. D. Del. Feb. 4, 2020); *In re RUI Holding Corp.,* Case No. 19-11509, (JTD) (Bankr. D. Del. Jul. 7, 2019); *In re THG Holdings LLC,* Case No. 19-11689 (JTD) (Bankr. D. Del. Jul 30, 2019); *In re HDR Holding, Inc.,* Case No. 19-11396 (MFW) (Bankr. D. Del. Jun. 24, 2019); *In re Joerns WoundCo Holdings, Inc.,* Case No. 19-11401 (JTD) (Bankr. D. Del. June 24, 2019); *In re Insys Therapeutics, Inc.,* Case No. 19-11292 (KG) (Bankr. D. Del. Jun 10, 2019); *In re Kona Grill, Inc.,* Case No. 19-10953 (CSS) (Bankr. D. Del. Apr. 30, 2019); *In re WMC Mortgage, LLC,* Case No. 19-10879 (CSS) (Bankr. D. Del. Apr. 23, 2019); *In re F+W Media, Inc.,* Case No. 19-10479 (KG) (Bankr. D. Del. Mar. 10, 2019).

27430189.9

the initial meeting of creditors under section 341(a) of the Bankruptcy Code (as applicable), (ii) notice of any claims bar date (as applicable), (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the a plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan or plans, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or the Court may deem necessary or appropriate for an orderly administration of the Chapter 11 Cases;

b.    If applicable, maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

c.    Maintain (i) a list of all potential creditors, equity holders, and other parties in interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party in interest or the Clerk;

d.    Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim;

e.    Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f.    For *all* notices, motions, orders or other pleadings or documents served, prepare and file, or cause to be filed, with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

g.    Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

h.    Maintain an electronic platform for purposes of filing proofs of claim;

i.    Maintain the official claims register for the Debtors (the "Claims Register") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with a certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii)

the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), and (vi) any disposition of the claim;

j.    Provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

k.    Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original proofs of claim;

l.    Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

m.    Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to Epiq's offices, not less than weekly;

n.    Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

o.    Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicate names and addresses from such lists;

p.    Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

q.    Assist in the dissemination of information to the public and respond to requests for administrative information regarding the Chapter 11 Cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

r.    Monitor the Court's docket in the Chapter 11 Cases and, when filings are made in error or containing errors, alert the filing party of such error and work with them to correct any such error;

s.    If the Chapter 11 Cases are converted to chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of the notice to Epiq of entry of the order converting the cases;

t.    Thirty (30) days prior to the close of the Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Epiq as Claims and Noticing Agent and terminating its services

in such capacity upon completion of its duties and responsibilities and upon the closing of the Chapter 11 Cases;

u.   Within seven (7) days of notice to Epiq of entry of an order closing the Chapter 11 Cases, provide to the Court the final version of the Claims Register as of the date immediately before the close of the cases; and

v.   At the close of the Chapter 11 Cases, (i) box and transport all original documents, in proper format, as provided by the Clerk's office, to (a) the Federal Archives Record Administration, 14700 Townsend Road, Philadelphia, PA 19154-1096 or (b) any other location requested by the Clerk's office; and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

10.   The Claims Register shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Epiq.

## **COMPENSATION**

11.   The Debtors are proposing to compensate Epiq for the Claims and Noticing Services set forth above in accordance with the pricing schedule attached to the Engagement Agreement.  The Debtors respectfully request that the undisputed fees and expenses incurred by Epiq in the performance of the Claims and Noticing Services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(l)(A) and be paid in the ordinary course of business without further application to or order of the Court.

12.   Epiq agrees to maintain records of all Claims and Noticing Services, including dates, categories of Claims and Noticing Services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), counsel for the Debtors, counsel for any statutory committee, and any party in interest that specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and

confer in an attempt to resolve the dispute.  If resolution is not achieved, the parties may seek resolution of the matter from the Court.

13.     Before the Petition Date, the Debtors provided Epiq a retainer in the amount of $25,000.00.  Epiq seeks to first apply the retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount of $25,000.00 and, thereafter, to hold the retainer as security of payment of Epiq's final invoice for services rendered and expenses incurred in performing the Claims and Noticing Services.

14.      Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Epiq and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Epiq's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or Order.  The Debtors believe that such indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these Chapter 11 Cases.

## EPIQ'S DISINTERESTEDNESS

15.     Although the Debtors do not propose to employ Epiq under section 327 of the Bankruptcy Code pursuant to this Section 156(c) Application (such retention will be sought by separate application), Epiq has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Hunt Declaration, Epiq has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

27430189.9

16.    Moreover, in connection with its retention as Claims and Noticing Agent, Epiq represents in the Hunt Declaration, among other things, that:

    a.    Epiq is not a creditor of the Debtors;

    b.    Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in the Chapter 11 Cases;

    c.    By accepting employment in the Chapter 11 Cases, Epiq waives any rights to receive compensation from the United States government in connection with the Chapter 11 Cases;

    d.    In its capacity as the Claims and Noticing Agent in the Chapter 11 Cases, Epiq will not be an agent of the United States and will not act on behalf of the United States;

    e.    Epiq will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in the Chapter 11 Cases;

    f.    Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

    g.    In its capacity as Claims and Noticing Agent in the Chapter 11 Cases, Epiq will not intentionally misrepresent any fact to any person;

    h.    Epiq shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

    i.    Epiq will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

    j.    None of the services provided by Epiq as Claims and Noticing Agent in the Chapter 11 Cases shall be at the expense of the Clerk's office.

17.    Epiq will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## BASIS FOR RELIEF REQUESTED

18.    The Court is permitted to appoint Epiq as Claims and Noticing Agent in the Chapter 11 Cases.  Pursuant to 28 U.S.C. § 156(c), the Court is authorized to utilize agents and

facilities other than the Clerk for the administration of bankruptcy cases.  Specifically, 28 U.S.C.

§ 156(c) provides, in relevant part, as follows:

> Any court may utilize facilities or services, either on or off the
> court's premises, which pertain to the provision of notices,
> dockets, calendars, and other administrative information to parties
> in cases filed under the provisions of title 11, United States Code,
> where the costs of such facilities or services are paid for out of the
> assets of the estate and are not charged to the United States.

11 U.S.C. § 105(a).  Moreover, Bankruptcy Rule 2002, which regulates the notices that must be

provided to creditors and other parties in interest in a bankruptcy case, provides that the Court

may direct that a person other than the Clerk give notice of the various matters described therein.

*See* Fed. R. Bankr. P. 2002.  In addition, Local Rule 2002-1(f) provides that "[u]pon motion of

the debtors or trustee, at any time without notice or hearing, the Court may authorize the

retention of a notice and/or claims clerk under 28 U.S.C. § 156(c)."  Del. Bankr. L.R. 2002-1(f).

19.     The appointment of Epiq as Claims and Noticing Agent will help to expedite and

more efficiently facilitate the administration of the Chapter 11 Cases, and will relieve the Clerk's

office of administrative burdens.  For these reasons, the Debtors respectfully submit that Epiq's

appointment as Claims and Noticing Agent is necessary and in the best interests of the Debtors

and their estates and will serve to maximize the value of the Debtors' estates for all stakeholders.

## COMPLIANCE WITH CLAIMS AGENT PROTOCOL

20.     The Debtors' selection of Epiq to act as the Claims and Noticing Agent has

satisfied the Claims Agent Protocol, in that the Debtors have obtained and reviewed engagement

proposals from at least two other court-approved claims and noticing agents to ensure selection

through a competitive process.  Moreover, the Debtors submit, based on all engagement

proposals obtained and reviewed, that Epiq's rates are competitive and reasonable given Epiq's

quality of services and expertise.

27430189.9

## RELIEF AS OF PETITION DATE IS APPROPRIATE

21.     In accordance with the Debtors' request, Epiq has agreed to serve as Claims and Noticing Agent on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention, effective as of the Petition Date, so that Epiq can be compensated for services rendered before approval of this Section 156(c) Application.  The Debtors believes that no party in interest will be prejudiced by the granting relief as of the Petition Date as proposed in this Section 156(c) Application, because Epiq has provided and continues to provide valuable services to the Debtors' estates during the interim period.

22.     Accordingly, the Debtors respectfully requests entry of the Order authorizing the Debtor to retain and employ Epiq as Claims and Noticing Agent effective as of the Petition Date.

## NOTICE

23.     Notice of this Section 156(c) Application has been or will be provided to: (i) the U.S. Trustee; (ii) the holders of the thirty (30) largest unsecured claims on a consolidated basis against the Debtors; (iii) counsel for the First Lien Agent for the Debtors' prepetition secured lenders; (iv) counsel for the Second Lien Agent for the Debtors' prepetition secured lenders; (v) counsel for the DIP Agents; (vi) counsel to the Indenture Trustee for the Debtors' Series D zero-coupon Convertible Senior Notes due 2023; (vii) the Internal Revenue Service; (viii) the Securities and Exchange Commission; and (ix) the Office of the United States Attorney for the District of Delaware.  As this Section 156(c) Application is seeking "first day" relief, the Debtors will serve copies of this Section 156(c) Application and any order entered in respect of this Section 156(c) Application as required by Local Rule 9013-1(m).  The Debtors believe that no further notice is required.

27430189.9

## <u>CONCLUSION</u>

WHEREFORE the Debtors respectfully request entry of the Order granting the relief

requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  October 14, 2021          YOUNG CONAWAY STARGATT & TAYLOR, LLP
        Wilmington, Delaware

                                           */s/ Betsy L. Feldman*
                                           Michael R. Nestor (No. 3526)
                                           Matthew B. Lunn (No. 4119)
                                           Shane M. Reil (No. 6195)
                                           S. Alexander Faris (No. 6278)
                                           Betsy L. Feldman (No. 6410)
                                           Rodney Square
                                           1000 North King Street
                                         Wilmington, Delaware 19801
                                         Telephone:  (302) 571-6600
                                         Facsimile:  (302) 571-1253
                                         Email:  mnestor@ycst.com
                                                 mlunn@ycst.com
                                                 sreil@ycst.com
                                                 afaris@ycst.com
                                                 bfeldman@ycst.com

                                         *Proposed Counsel to the Debtors and*
                                         *Debtors in Possession*

# **EXHIBIT A**

## **Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TELIGENT, INC., *et al.*,[1] | Case No. 21-11332 (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. ___** |

## ORDER APPOINTING EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF PETITION DATE

Upon the application (the "Section 156(c) Application")[2] of the debtors and debtors in possession in the above-captioned chapter 11 cases (the "Debtors") for entry of an order, pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002, and Local Rule 2002-1(f), appointing Epiq Corporate Restructuring, LLC ("Epiq") as the Claims and Noticing Agent in the Debtors' Chapter 11 Cases, effective as of the Petition Date, to, among other things, (a) distribute required notices to parties in interest, (b) receive, maintain, docket, and otherwise administer the proofs of claim filed in the Debtors' Chapter 11 Cases, and (c) provide such other administrative services as required by the Debtors that would fall within the purview of services to be provided by the Clerk's office, all as more fully set forth in the Section 156(c) Application; and this Court having jurisdiction to consider the Section 156(c) Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Section 156(c) Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Teligent, Inc. (5758); Igen, Inc. (7443); Teligent Pharma, Inc. (1639); and TELIP LLC (8395).  The Debtors' corporate headquarters is located at 33 Wood Ave, 7th Floor, Iselin, NJ 08830.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

27430189.9

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Section 156(c) Application having been provided to the Notice Parties under the circumstances,

and it appearing that no other or further notice need be provided; and this Court having held a

hearing to consider the relief requested in the Section 156(c) Application (the "Hearing"); and

upon the First Day Declaration and the Hunt Declaration, the record of the Hearing, and all

proceedings had before this Court; and this Court having determined that the legal and factual

bases set forth in the Section 156(c) Application establish just cause for the relief granted herein;

and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT

1.      The Section 156(c) Application is granted as set forth herein.

2.      Notwithstanding the terms of the Engagement Agreement attached to the Section

156(c) Application, the Section 156(c) Application is granted solely as set forth in this Order and

solely with respect to the Claims Management and Noticing services set forth in the Services

Schedule attached to the Engagement Agreement.

3.      Pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code,

Bankruptcy Rule 2002, and Local Rule 2002-1(f), the Debtors are authorized to retain Epiq as

Claims and Noticing Agent in these Chapter 11 Cases, effective as of the Petition Date, under the

terms of the Engagement Agreement, and Epiq is authorized and directed to perform the Claims

and Noticing Services and to receive, maintain, record and otherwise administer the proofs of

claim filed in these Chapter 11 Cases, and perform all related tasks as set forth in the Section

156(c) Application.

4.      Epiq shall serve as the custodian of court records and shall be designated as the

authorized repository for all proofs of claim filed in these Chapter 11 Cases, and is authorized

27430189.9

and directed to maintain the official Claims Register for the Debtors, to provide public access to every proof of claim unless otherwise ordered by the Court, and to provide the Clerk with a certified duplicate thereof upon request of the Clerk.

5.      Epiq is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

6.      Epiq is authorized to take such other actions as required to comply with all duties set forth in the Section 156(c) Application and this Order.

7.      Epiq shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

8.      Without further order of this Court, the Debtors are authorized to compensate Epiq in accordance with the terms and conditions of the Engagement Agreement upon receipt of reasonably detailed monthly invoices setting forth the services provided by Epiq and the rates charged for each, and to reimburse Epiq for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Epiq to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

9.      Epiq shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, counsel for any statutory committee, and any party in interest that specifically requests service of the monthly invoices.

10.     The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Engagement Agreement or monthly invoices, and the parties may seek resolution of the matter from this Court if resolution is not achieved.

27430189.9

3

11.     Notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order during the pendency of the Chapter 11 Cases.

12.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, Epiq's fees and expenses incurred in connection with the Claims and Noticing Services shall be an administrative expense of the Debtors' chapter 11 estates.

13.     Epiq may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount of $25,000.00 and thereafter Epiq may hold the retainer during these Chapter 11 Cases as security of payment of Epiq's final invoice for services rendered and expenses incurred under the Engagement Agreement.

14.     The Debtors are authorized to indemnify Epiq under the terms of the Engagement Agreement, subject to the following modifications:

a.      Epiq shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services other than the Claims and Noticing Services provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

b.      Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify Epiq, or provide contribution or reimbursement to Epiq, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from Epiq's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of Epiq's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Claims and Noticing Agent should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order;

c.      If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no

longer subject to appeal), or (ii) the entry of an order closing these Chapter 11 Cases, Epiq believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including without limitation the advancement of defense costs, Epiq must file an application therefor in this Court, and the Debtors may not pay any such amounts to Epiq before the entry of an order by this Court approving the payment.  This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Epiq for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Epiq.  All parties in interest shall retain the right to object to any demand by Epiq for indemnification, contribution, or reimbursement.

15.    Notwithstanding anything to the contrary in the Engagement Agreement, for services rendered pursuant to this Order, the limitation of liability contained in paragraph 8 of the Engagement Agreement shall have no force or effect during the pendency of the Chapter 11 Cases.

16.    In the event Epiq is unable to provide the Claims and Noticing Services, Epiq shall immediately notify the Clerk and the Debtors' counsel and cause all original proofs of claim and computer information to be turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' counsel.

17.    The Debtors may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or any applicable law, for services that are to be performed by Epiq but are not specifically authorized by this Order.

18.    Notwithstanding anything to the contrary in the Section 156(c) Application and Engagement Agreement, consistent with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c), Epiq shall only perform services that would be performed by a Clerk of Court and that duties involving the preparation of schedules, acting as

27430189.9

5

balloting and tabulation agent, or distributing assets pursuant to a confirmed plan of reorganization shall be the subject of a separate application to and order of the Court.

19.     Epiq shall not cease providing Claims and Noticing Services during these Chapter 11 Cases for any reason, including nonpayment, without an order of the Court.

20.     In the event of any inconsistency between the Engagement Agreement, the Section 156(c) Application, and this Order, this Order shall govern.

21.     The Debtors and Epiq are authorized to take all action necessary to effectuate the relief granted in this Order.

22.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

## **EXHIBIT B**

**Hunt Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TELIGENT, INC., *et al.*,[1] | Case No. 21-11332 (___) |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF BRIAN HUNT IN SUPPORT**
**OF APPLICATION OF THE DEBTORS FOR ENTRY OF ORDER**
**APPOINTING EPIQ CORPORATE RESTRUCTURING, LLC AS**
**CLAIMS AND NOTICING AGENT EFFECTIVE AS OF PETITION DATE**

I, Brian Hunt, being duly sworn, state the following under penalty of perjury and that the following is true to the best of my knowledge, information and belief:

1.     I am a Consulting Director with Epiq Corporate Restructuring, LLC ("Epiq"), with offices located at 777 3rd Ave., 12th Floor, New York, NY 10017.  I am authorized to submit this declaration (this "Declaration") in support of the *Application of the Debtors for Entry of Order Appointing Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of Petition Date* (the "Section 156(c) Application").[2]  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.     Epiq is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other administrative aspects of chapter 11 cases.  Epiq has acted as the claims and noticing agent in numerous recent cases of varying size and complexity, including the following recent cases filed

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Teligent, Inc. (5758); Igen, Inc. (7443); Teligent Pharma, Inc. (1639); and TELIP LLC (8395).  The Debtors' corporate headquarters is located at 33 Wood Ave, 7th Floor, Iselin, NJ 08830.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

in this District:  *In re Alamo Drafthouse Cinemas Holdings, LLC*, Case No. 21-10474 (MFW)

(Bankr. D. Del. Mar. 4, 2021); *In re Town Sports International, LLC,* Case No. 20-12168 (CSS)

(Bankr. D. Del. Sept 14, 2020); *In re Energy Alloys Holdings, LLC,* Case No. 20-12088 (MFW)

(Bankr. D. Del. Sep. 9, 2020); *In re Quorum Health Corporation,* Case No. 20-10766 (KBO)

(Bankr. D. Del. Apr 07, 2020)*; In re Earth Fare, Inc.,* Case No. 20-10256, (KBO) (Bankr. D.

Del. Feb. 4, 2020); *In re RUI Holding Corp.,* Case No. 19-11509, (JTD) (Bankr. D. Del. Jul. 7,

2019); *In re THG Holdings LLC,* Case No. 19-11689 (JTD) (Bankr. D. Del. Jul 30, 2019); *In re

HDR Holding, Inc.,* Case No. 19-11396 (MFW) (Bankr. D. Del. Jun. 24, 2019); *In re Joerns

WoundCo Holdings, Inc.,* Case No. 19-11401 (JTD) (Bankr. D. Del. June 24, 2019); *In re Insys

Therapeutics, Inc.,* Case No. 19-11292 (KG) (Bankr. D. Del. Jun 10, 2019); *In re Kona Grill,

Inc.,* Case No. 19-10953 (CSS) (Bankr. D. Del. Apr. 30, 2019); *In re WMC Mortgage, LLC,* Case

No. 19-10879 (CSS) (Bankr. D. Del. Apr. 23, 2019); *In re F+W Media, Inc.,* Case No. 19-10479

(KG) (Bankr. D. Del. Mar. 10, 2019).

     3.     As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), Epiq

will perform, at the request of the Clerk's office, the noticing and claims services specified in the

Section 156(c) Application and Engagement Agreement.  In addition, at the Debtors' request,

Epiq will perform such other claims and noticing services specified in the Section 156(c)

Application.  For the avoidance of doubt, pursuant to the Engagement Agreement, Epiq will

perform the Claims and Noticing Services for the Debtors in these Chapter 11 Cases.

     4.     Subject to Court approval, the Debtors have agreed to compensate Epiq for

professional services rendered pursuant to 28 U.S.C. §156(c) in connection with these Chapter

11 Cases according to the terms and conditions of the Engagement Agreement.  Payments are to

be based upon the submission of a billing statement by Epiq to the Debtors after the end of each

calendar month which includes a detailed listing of services and expenses.  Epiq has received a

$25,000.00 retainer from the Debtors and will first apply the retainer to all prepetition invoices,

which retainer shall be replenished to the original retainer amount of $25,000.00 and, thereafter,

to hold the retainer as security of payment of Epiq's final invoice for services rendered and

expenses incurred in performing the Claims and Noticing Services.

5.    Epiq represents, among other things, the following:

a.    Epiq is not a creditor of the Debtors;

b.    Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases;

c.    By accepting employment in these Chapter 11 Cases, Epiq waives any rights to receive compensation from the United States government in connection with these Chapter 11 Cases;

d.    In its capacity as the Claims and Noticing Agent in these Chapter 11 Cases, Epiq will not be an agent of the United States and will not act on behalf of the United States;

e.    Epiq will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these Chapter 11 Cases;

f.    Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

g.    In its capacity as Claims and Noticing Agent in these Chapter 11 Cases, Epiq will not intentionally misrepresent any fact to any person;

h.    Epiq shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

i.    Epiq will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j.    None of the services provided by Epiq as Claims and Noticing Agent in these Chapter 11 Cases shall be at the expense of the Clerk's office.

6.      Although the Debtors do not propose to retain Epiq under section 327 of the Bankruptcy Code pursuant to the Section 156(c) Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of identified potential parties in interest (the "Potential Parties in Interest") in these Chapter 11 Cases.  The list of Potential Parties in Interest was provided by the Debtors and is attached hereto as Schedule 1.  Epiq is not aware of any relationship that would present a disqualifying conflict of interest.  To the extent that Epiq's conflicts check has revealed that certain Potential Parties in Interest were current or former clients of Epiq within the past three years, these parties have been identified on a list annexed hereto as Schedule 2 (the "Client Match List").  However, given Epiq's neutral position as claims and noticing agent or administrative advisor for any parties listed on the Client Match List, Epiq does not view such relationships as real or potential conflicts.  Further, to the best of my knowledge, any such relationship between Epiq and any parties on the Client Match List is completely unrelated to these Chapter 11 Cases.

7.      In addition, to the best of my knowledge, none of Epiq's employees are related to bankruptcy judges in the District of Delaware, the United States Trustee for Region 3, any attorney known by Epiq to be employed in the Office of the United States Trustee serving the District of Delaware or are equity security holders of the Debtors.

8.      To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Epiq, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors, or other relevant parties.  Epiq may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Epiq serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for other chapter 11 debtors.

27430189.9

9.      Epiq is a wholly owned subsidiary of Epiq Systems, Inc., which is corporate parent to certain companies that provide integrated technology products and services to the legal profession for electronic discovery, class action settlements, financial transactions, chapter 7 and 13 bankruptcy, litigation, and regulatory compliance. Given the legal and operational separateness of Epiq from its affiliates and the administrative nature of the services performed by such companies, Epiq does not believe that a conflict would arise solely from any relationship or claim of an Epiq affiliate or its corporate parent.

10.      Epiq Systems, Inc., is a wholly owned subsidiary of Document Technologies, LLC ("DTI"), a global legal process outsourcing company, which is an ultimate wholly owned subsidiary of DTI Topco, Inc. ("DTI Topco").  DTI Topco is a privately-held entity with majority ownership held by OMERS Administration Corporation ("OAC"), the administrator of the OMERS pension funds, and managed by OMERS Private Equity Inc. ("OPE", which together with OAC are referred to as "OMERS"), and funds managed by Harvest Partners, LP, ("Harvest") a leading private equity investment firm.

11.      Neither DTI, DTI Topco, OMERS nor Harvest is currently identified on the Potential Parties in Interest list. However, the following disclosure is made out of an abundance of caution and in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.

12.      Designees of OMERS and Harvest are members of the Board of Directors of DTI Topco ("Parent Board Designees"). No designees of OMERS or Harvest are members of the Board of Directors of DTI or Epiq, or any other subsidiaries of DTI. Further, Epiq has the following restrictions in place (collectively, the "Barrier"):  (i) prior to the Debtors commencing these cases, Epiq did not share the names or any other information identifying the Debtors with DTI, DTI Topco, OMERS, Harvest, or the Parent Board Designees; (ii) Epiq has not and will not

furnish any material nonpublic information about the Debtors to DTI, DTI Topco, OMERS, Harvest, or the Parent Board Designees; (iii) no DTI, DTI Topco, OMERS or Harvest personnel, including the Parent Board Designees, work on Epiq client matters or have access to Epiq client information, client files, or client personnel; (iv) no DTI, DTI Topco, OMERS or Harvest personnel, including the Parent Board Designees, work in Epiq's offices; (v) other than the Parent Board Designees, Epiq operates independently from DTI, DTI Topco, OMERS and Harvest, including that it does not share any employees, officers or other management with OMERS or Harvest, has separate offices in separate buildings, and has separate IT systems; and (vi) no Epiq executive or employee is a director, officer or employee of OMERS or Harvest (or vice versa other than the Parent Board Designees).

13.    Epiq has searched the names of DTI, DTI Topco, OMERS and Harvest against the Debtors and the Potential Parties in Interest list provided by the Debtors. Based solely on the foregoing search, Epiq has determined, to the best of its knowledge, that there are no connections. Because of any applicable securities laws and the fact that Epiq operates independently from DTI, DTI Topco, OMERS and Harvest, prior to the Petition Date, Epiq was unable to further investigate with either OMERS or Harvest, to the extent necessary, any potential or actual connection between either OMERS or Harvest and the Debtors and the potential parties in interest.

14.    Epiq has working relationships with certain of the professionals retained by the Debtors and other parties herein but such relationships are completely unrelated to these Chapter 11 Cases.  Epiq has represented, and will continue to represent, clients in matters unrelated to these Chapter 11 Cases, and has had, and will continue to have, relationships in the ordinary

course of its business with certain professionals in connection with matters unrelated to these Chapter 11 Cases.

15.     Epiq has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, these Chapter 11 Cases.  If Epiq's proposed retention is approved by this Court, Epiq will not accept any engagement or perform any service for any entity or person other than the Debtors in these Chapter 11 Cases.

16.     Based on the foregoing, I believe Epiq is a "disinterested person" as that term is referenced in section 327(a) of the Bankruptcy Code and as defined in section 101(14) of the Bankruptcy Code.  Moreover, to the best of my knowledge, neither Epiq nor any of its partners or employees hold or represent any interest materially adverse to the Debtors' estates with respect to any matter upon which Epiq is to be engaged.

17.     I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.


Dated: October 14, 2021
        New York, New York

                                        */s/ Brian Hunt*
                                        Brian Hunt
                                        Consulting Director
                                        Epiq Corporate Restructuring, LLC

## **SCHEDULE 1**

**Potential Parties in Interest**

**TELIGENT, INC.**

*List of Potential Parties in Interest*

**Debtors**

Igen, Inc.
Teligent Pharma, Inc.
Teligent, Inc.
TELIP LLC

**Non-Debtor Affiliates**

Teligent Canada, Inc.
Blood Cells, Inc.
Flavorsome, Ltd.
Microburst Energy, Inc.
Teligent Luxembourg, S.á.r.l
Teligent OÜ

**Debtor Directors and Officers**

Tim Sawyer
Philip Yachmetz
Mark Mantel
Eric Music
Antonio Di Nicola
William Graham
Devendra Shah
Carole S. Ben-Maimon, M.D.
John Celentano
Bhaskar Chaudhuri
James C. Gale
Steven Koehler
Thomas J. Sabatino, Jr.
Jacques-Olivier Cogis
Anneli Simm

**Bondholders**

Blackwell Partners LLC
Citadel Equity Fund Ltd.
Exchange Global Note
Highbridge Capital Management, LLC
Laurence Lytton
LMAP Kappa Limited
Nantahala
Nantahala Capital Partners II Limited Partnership
Nantahala Capital Partners SI, LP
New Money Global Note

Silver Creek CS SAV, L.L.C.
Silverback
Silverback Opportunistic Credit Master Fund Limited
Silverback Asset Management, LLC
Symphony Asset Management, LLC
The Hewlett Fund LP
UBS O'Connor LLC

**Debtors' Professionals**

Raymond James & Associates, Inc.
Portage Point Partners, LLC
Young Conaway Stargatt & Taylor, LLP
K&L Gates LLP

**Banks/Lender/UCC Lien Parties/Administrative Agents**

Ares Capital Corporation
Bank of Montreal
Citibank Delaware
Pacific Northwest
Pacific Western Bank
Raymond James & Associates, LLC
Swedbank

**Material Vendors and Contract Counterparties**

AmerisourceBergen Corp.
Cardinal Health, Inc.
Eversana Life Sciences Services, LLC
McKesson Drug Co.

**Landlords**

2440 N. Mill Road
BDGS Inc.
Boulevard Business Center
Foundation Tallinna Teaduspark Tehnopol
Metro Park Associates

**Insurers**

AmWINS Brokerage (York)
Associated Industrials Insurance Co.

Axis (York)
Cigna
Columbia Casualty Co.
Continental Casualty Co.
First Insurance Funding
Great American (York)
Hiscox (Lloyd's)
Hudson Insurance Co.
National Union Fire Insurance Co. (AIG)
Navigators (Lloyd's)
Old Republic Insurance Co.
Pet Benefit Solutions
PrimePay
RSUI
Sunlife Financial
The Charter Oak Fire Insurance Co.
The Continental Insurance Co.
The Hartford
Travelers Insurance Co.
Travelers Property & Casualty
Travelers WC Insurance
Wesco Insurance Company
XL Specialty Insurance Co.
York International Agency, LLC

**Utilities**

Atlantic City Electric
Borough of Buena Municipal Utilities
Direct Energy Business
South Jersey Gas
The Training Center Group, LLC
Vineland Municipal Utilities

**Taxing Authorities**

State of Alabama
State of California
State of Delaware
State of Hawaii
State of Massachusetts
State of Montana
State of New Jersey
State of Tennessee

**Top 30 Unsecured Creditors**

Agility Technologies Group
AmeriSource Bergen Corporation
Andler South Corporation
Atlantic City Electric

Berlin Packaging LLC
Broadridge ICS
Cardinal Health, Inc.
Chemwerth USA
Cintas Corporation
Consumer Product Testing Co.
CVS Pharmacy, Inc.
EVERSANA Life Science Services, LLC
Fennelly Environmental Associates, LLC
Flavine North America, Inc.
Generic Medical Partners, Inc.
Grassi & Co.
Horizon BC BS of NJ
Innomar Strategies
McKesson Corporation
Medix
Optime Care
OptiSource, LLC
Oxford Global Resources, LLC
PANPHARMA SA
PricewaterhouseCoopers
RHO Inc
Siegfried USA, LLC
SINTETICA S.A.
The Training Center Group, LLC
Walgreens Company

**Governmental and Regulatory Agencies**

Food and Drug Administration
Centers for Medicare & Medicaid Services

**Ordinary Course Professionals**

Hogan Lovells US LLP
White & Case LLP
Blake Cassells & Raydon, LLP

**Litigation Parties**

1199SEIU National Benefit Fund
Cesar Castillo, Inc.
Detectives Endowment Association of The City of New York
Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund
FWK Holdings, L.L.C
Harris County, Texas
Health Care Service Corp.
Humana Inc.

International Union of Operating Engineers,
Locals 302 And 612 Construction Industry
Health and Security Fund
Kathryn Eaton
KPH Healthcare Services, Inc.
Louisiana Health Service Indemnity Company
Molina Healthcare, Inc.
MSP Recovery Claims, Series LLC
NECA-IBEW Welfare Trust Fund
Oklahoma Police Pension Fund and Retirement
Plan
Philadelphia Federation of Teachers Health and
Welfare Fund
Rochester Drug Co-Operative, Inc.
State of New Mexico, ex rel. Hector H.
Balderas, Attorney General
Stayma Consulting Services, LLC
The Kroger Co.
The State of Connecticut
UFCW Local 1500 Welfare Fund
United HealthCare Services, Inc.
Valdepharm SA
West Val Pharmacy

Jane Leamy
Joseph McMahon
Juliet Sarkessian
Karen Starr
Lauren Attix
Linda Casey
Linda Richenderfer
Michael Panacio
Nyanquoi Jones
Ramona Vinson
Richard Schepacarter
Rosa Sierra
Shakima L. Dortch
T. Patrick Tinker
Timothy J. Fox, Jr.

**United States Bankruptcy Judges in the
District of Delaware**

John T. Dorsey
Karen B. Owens
Brendan L. Shannon
Laurie Selber Silverstein
Christopher S. Sontchi
Mary F. Walrath
Ashley M. Chan
Craig T. Goldblatt
J. Kate Stickles

**Office of the United States Trustee**

Andrew Vara
Benjamin Hackman
Christine Green
David Buchbinder
David Villagrana
Denis Cooke
Diane Giordano
Dion Wynn
Edith A. Serrano
Hannah M. McCollum
Holly Dice
James R. O'Malley

27393581.4

3

## SCHEDULE 2

### Client Match List

| Name | Relationship to Debtors |
|---|---|
| 1199SEIU National Benefit Fund | Litigation |
| AmerisourceBergen Corp. | Material Vendors and Contract Counterparties |
| Bank of Montreal | Banks/Lender/UCC Lien Parties/Administrative Agents |
| Blackwell Partners LLC | Bondholders |
| Cardinal Health, Inc. | Material Vendors and Contract Counterparties |
| Cigna | Insurers |
| Continental Casualty Co. | Insurers |
| CVS Pharmacy, Inc. | Top 30 Unsecured Creditors |
| Harris County, Texas | Litigation |
| Health Care Service Corp. | Litigation |
| Humana Inc. | Litigation |
| K&L Gates LLP | Ordinary Course Professionals |
| Morgan Stanley | Stockholder |
| National Union Fire Insurance Co. (AIG) | Insurers |
| Old Republic Insurance Co. | Insurers |
| PrimePay | Insurers |
| Raymond James & Associates, Inc. | Debtors' Professionals |
| Rochester Drug Co-Operative, Inc. | Litigation |

| | |
|---|---|
| RSUI, Travelers Insurance Co. | Insurers |
| State of Alabama | Taxing Authorities |
| State of Connecticut | Litigation |
| State of Delaware | Taxing Authorities |
| State of Hawaii | Taxing Authorities |
| State of New Jersey | Taxing Authorities |
| Stayma Consulting Services, LLC | Litigation |
| Teligent, Inc. | Debtor |
| The Charter Oak Fire Insurance Co. | Insurers |
| The Continental Insurance Co. | Insurers |
| The Hartford | Insurers |
| Travelers Insurance Co. | Insurers |
| Travelers Property & Casualty | Insurers |
| United HealthCare Services, Inc. | Litigation |
| White & Case LLP | Ordinary Course Professionals |
| Young Conaway Stargatt & Taylor, LLP | Professional |
| XL Specialty Insurance Co. | Insurers |

## **EXHIBIT C**

**Engagement Agreement**



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below.  In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1.  Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the Services Schedule hereto (the "Services") in connection with a corporate restructuring.  Services will be provided on an as needed basis and upon request or agreement of Client.  Charges for the Services will be based on the pricing schedule provided to Client hereto (the "Pricing Schedule").  The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service.  Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2.  Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding.  The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

**3.  Charges.**

3.1    For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable.  Epiq will bill Client monthly.  All invoices shall be due and payable upon receipt.

3.2    Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2022.  If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.



3.3  Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4  Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based.  This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5  Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission.  Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6  In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7  To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $25,000 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement.  The Retainer is due upon execution of this Agreement.  Epiq shall be entitled to hold the Retainer until the termination of the Agreement.  Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

**4.  <u>Confidentiality.</u>**

Client data provided to Epiq during the term of this Agreement in connection with the Services ("<u>Client Data</u>") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; <u>provided</u>, <u>however</u>, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data.  Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.



## 5.   Title to Property.

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property").  Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services.  Client agrees not to copy or permit others to copy any of the Property.

## 6.   Disposition of Data.

6.1   Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data.  Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq.  Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq.  Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services.  Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2   Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full.  Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq.  Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law).  Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials.  Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.

## 7.   Indemnification.

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs



(including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person.  Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement.  Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

## 8. <u>Limitation of Liability</u>

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.



## 9.   Representations / Warranties.

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## 10. Confidential On-Line Workspace

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace.  By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

## 11.  General

11.1   No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

11.2   This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld.  The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

11.3   This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.  Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights.  Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

11.4   The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

11.5   Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

11.6   In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.



11.7  Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

11.8  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

11.9  All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein.  The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.



11.10   Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

<u>If to Epiq</u>:

    Epiq Corporate Restructuring, LLC
    777 Third Avenue, 12th Floor
    New York, New York 10017
    Attn:  Robert A. Hopen

<u>If to Client</u>:

    Teligent, Inc.
    105 Lincoln Avenue
    Buena, NJ  08310
    Attn:  Phillip K. Yachmetz, Chief Legal Officer

<u>With a copy to</u>:

    Young Conaway Stargatt & Taylor, LLP
    Rodney Square, 1000 North King Street
    Wilmington, DE  19801
    Attention: Matt Lunn, Esq.

11.11 Invoices sent to Client should be delivered to the following address:

    Teligent, Inc.
    105 Lincoln Avenue
    Buena, NJ  08310
    Attn:  Ernest DePaolantonio CFO

    Email:        edepaolantonio@teligent.com

11.12   The "Effective Date" of this Agreement is September 21, 2021.



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

Name:  Robert A. Hopen
Title:    President


**TELIGENT, INC.**

By:

Name:  Philip K.   Yachmetz

Title:    EVP & Chief Legal Officer

8



# SERVICES SCHEDULE

## SCHEDULES/STATEMENT PREPARATION

➤ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of Schedules and Statements data.
- Coordinate collection of data from Client and advisors.
- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

## CLAIMS MANAGEMENT

➤ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➤ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➤ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➤ Process all proof of claim/interest submitted.

➤ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➤ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.



➢ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

➢ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

➢ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

➢ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

➢ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.

## <u>NOTICING</u>

➢ Prepare and serve required notices in these  Chapter 11 cases, including:

- Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

- Notice of any auction sale hearing;

- Notice of the claims bar date;

- Notice of objection to claims;

- Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➢ Update claim database to reflect undeliverable or changed addresses.



➢ Coordinate publication of certain notices in periodicals and other media.

➢ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

## BALLOTING/TABULATION

➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

- Consult with Client and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist Client in requesting these listings).

- Coordinate distribution of solicitation documents.

- Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

- Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.

- Receive and examine all ballots and master ballots cast by voting parties.  Date- stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

Undertake such other duties as may be requested by the Client.

## CALL CENTER

➢ Provide state-of-the-art Call Center facility and services, including (as needed):

- Create frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.



**<u>MISCELLANEOUS</u>**

➢ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➢ Provide temporary employees to the Clerk's Office to process claims, as necessary.



# PRICING SCHEDULE

## CLAIM ADMINISTRATION HOURLY RATES

| Title | Rates |
|---|---|
| Clerical/Administrative Support | $29.75 – $55.00 |
| IT / Programming | $55.25 – $75.25 |
| Case Managers | $75.25 – $140.25 |
| Consultants/ Directors/Vice Presidents | $140.25 – $165.75 |
| Solicitation Consultant | $165.75 |
| Executive Vice President, Solicitation | $182.75 |
| Executives | No Charge |

## CLAIMS AND NOTICING RATES[1]

| | |
|---|---|
| Printing | $0.10 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
| E-Mail Noticing | WAIVED FOR MSL[*] |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

## DATA MANAGEMENT RATES

| | |
|---|---|
| Data Storage, Maintenance and Security | $0.10 per record/month |
| Electronic Imaging | $0.10 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| CD- ROM (Mass Document Storage) | Quoted at time of request |

## ON-LINE CLAIM FILING SERVICES

| | |
|---|---|
| On-Line Claim Filing | NO CHARGE |

---

[1]    Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

[*]Quoted at time of request for high volume blasts to all creditors



**CALL CENTER RATES**

Standard Call Center Setup      NO CHARGE

Call Center Operator      $55 per hour

Voice Recorded Message      $0.34 per minute

**OTHER SERVICES RATES**

Custom Software, Workflow
and Review Resources      Quoted at time of request

Escrow Services      Competitive interest rates

eDiscovery      Quoted at time of request, bundled pricing available

Virtual Data Room --
Confidential On-Line Workspace      Quoted at time of request

Disbursements -- Check and/or Form 1099      Quoted at time of request

Disbursements -- Record to Transfer Agent      Quoted at time of request