## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TELIGENT, INC., *et al.*,[1] | Case No. 21-11332 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION
EMPLOYEE WAGES, SALARIES, AND OTHER COMPENSATION AND
(B) CONTINUE EMPLOYEE BENEFITS OBLIGATIONS AND PAY RELATED
ADMINISTRATIVE OBLIGATIONS; (II) AUTHORIZING THE DEBTORS TO PAY
AND/OR HONOR ANY WORKERS' COMPENSATION OBLIGATIONS AND
WAIVING THE AUTOMATIC STAY AS IT APPLIES TO WORKERS'
COMPENSATIONS CLAIMS; (III) AUTHORIZING BANKS TO HONOR
AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS
RELATED THERETO; AND (IV) GRANTING RELATED RELIEF**

The above-captioned affiliated debtors and debtors in possession (collectively, the "Debtors") hereby file this motion (this "Motion") for entry of interim and final orders, substantially in the forms attached hereto as Exhibit A (the "Interim Order") and Exhibit B (the "Final Order," and together with the Interim Order, the "Proposed Orders"), respectively, pursuant to sections 105(a), 362(d), 363(b), and 507(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i) authorizing the Debtors to (a) continue the Compensation Programs (as defined below), and (b) continue the Benefits Programs (as defined below); (ii) authorizing the Debtors to pay and/or

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Teligent, Inc. (5758); Igen, Inc. (7443); Teligent Pharma, Inc. (1639); and TELIP LLC (8395).  The Debtors' corporate headquarters is located at 33 Wood Ave, 7th Floor, Iselin, NJ 08830.

honor workers' compensation claims and waiving the automatic stay as it applies to workers' compensations claims; (iii) authorizing Banks (as defined below) to honor and process check and electronic transfer requests related thereto; and (iv) granting related relief.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Vladimir Kasparov in Support of Chapter 11 Petitions and First-Day Motions* (the "<u>First Day Declaration</u>"),[2] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief sought herein are sections 105(a), 362(d), 363(b), 507(a)(4), 507(a)(5), 541, 1107(a), and 1108 of title 11 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m).

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

26731548.13

## BACKGROUND

**A.**     **General Background**

3.     The Debtors develop, manufacture, and market specialty generic pharmaceutical products, specifically topical pharmaceutical products, for use in the United States.  In addition, the Debtors provide contract-manufacturing services to the pharmaceutical, over the counter, and cosmetic markets.

4.     On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors, contemporaneously with this Motion, filed a motion requesting procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  No official committees have been appointed in the Chapter 11 Cases and no request has been made for the appointment of a trustee or an examiner.

5.     Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the First Day Declaration.

**B.**     **The Debtors' Workforce**

6.     As of the Petition Date, the Debtors employed approximately eighty-five (85) full-time and salaried employees and forty-nine (49) hourly employees in the United States (collectively, the "Employees").  All of the Debtors' Employees work at the Debtors' offices located in New Jersey.

7.     The Employees, as with any business entity, perform a variety of critical functions for the Debtors, and their knowledge, skills, and understanding of the Debtors' infrastructure,

business operations, and vendor relations is essential to the success of the Chapter 11 Cases. Without the continued service and dedication of the Employees, it will be difficult, if not impossible, to operate the Debtors' businesses without an unexpected or inopportune interruption and to prosecute the Chapter 11 Cases in a manner that will maximize the value of the Debtors' estates. Thus, to successfully accomplish the foregoing, to minimize the personal hardship that the Employees will suffer if prepetition Employee-related obligations are not paid when due or as otherwise expected, and to maintain Employee morale and a focused workforce during this critical time, the Debtors believe that it is necessary and in the best interest of their estates and all stakeholders to seek the relief requested herein.

8.      In addition to the Employees, the Debtors supplement their workforce from time to time by retaining certain temporary workers and independent contractors (the "Supplemental Workers") whose services are procured indirectly through certain staffing agencies (the "Staffing Agencies"), to provide temporary labor for specific projects or in certain markets. As of the Petition Date, approximately forty-two (42) Supplemental Workers provide services to the Debtors. The Staffing Agencies pay the wages and benefits of the Supplemental Workers. Like the Employees, the Staffing Agencies and the Supplemental Workers are critical to the Debtors' operations.

## C.      Employee Obligations

9.      The Debtors estimate that, as of the Petition Date, the aggregate amount of unpaid Employee Wages and Benefits (as defined below) is approximately $1.576 million. The specific components of the Employee Wages and Benefits are described in further detail below. By this Motion, the Debtors seek authority to pay Employee Wages and Benefits in the ordinary course of business.

10.     Key categories of employee obligations (collectively, the "Wages and Benefits") and the proposed maximum prepetition amounts the Debtors seek to pay with respect thereto in connection with this Motion are set forth in the chart below:

| Employee Obligations | Approximate Amount Outstanding |
|---|---|
| **Employee Wages, Other Compensation, Business Expenses, Deductions, and Payroll Taxes** | |
| ADP Fees | $0 |
| Wages & Fees | $1,000,000 |
| Bonus Program | $0 |
| Employee Expenses | $35,000 |
| Corporate Card Fees | $0 |
| Deductions & Taxes | $0 |
| **Employee Benefits** | |
| Health Benefits | $0 |
| COBRA | $0 |
| Paid Time Off | $500,000 |
| Retirement Plan Contributions and Fees | $5,000 |
| Additional Employee Benefits | $1,000 |
| **Workers' Compensation Program** | |
| WC Policy | $35,000 |
| **Total:** | **$1,576,000** |

**D.     Obligations on Account of Employee Wages and Other Compensation, Business Expenses, Deductions, and Payroll Taxes[3]**

*i.        Wages and Other Basic Compensation*

11.     Historically, the Debtors' combined gross aggregate payroll liability is approximately $1.1 million per month.  All of the Debtors' Employees in the United States work on a salary basis and are paid bi-weekly on Fridays five (5) days in arrears (the "Payroll").

12.     The Debtors' most recent Payroll was made on October 1, 2021 in the amount of $636,487, which included ordinary course incentive compensation for certain Employees.

---

[3] Employee benefits referenced in this section shall collectively be referred to as the "Compensation Programs."

13.     The Debtors utilize ADP Workforce Now ("ADP") as their third-party payroll processor to manage all of their payroll functions related to the Employees.  ADP charges the Debtors a fee for its services, which totals approximately $3,000 per month, and the Debtors are invoiced by ADP when services are rendered.  The Debtors believe that, as of the Petition Date, they are current on amounts due to be remitted in connection with ADP's services.

14.     Based on historical payrolls, the Debtors believe that, as of the Petition Date, approximately $200,000 in the aggregate remains outstanding on account of accrued unpaid compensation due from the Debtors to the Employees (the "Unpaid Wages") and approximately $800,000 remains outstanding on account of unpaid fees and compensation due to Staffing Agencies and independent contractors for services provided by the Supplemental Workers (the "Fees," and together with the Unpaid Wages, the "Wages and Fees").

15.     The Debtors' failure to remit full payment of the amount that the Debtors believe remains outstanding as of the Petition Date on account of Wages and Fees would inflict great financial hardship on the Employees and Supplemental Workers, damage Employee morale, and impair the Debtors' reorganization efforts.  The Debtors, therefore, respectfully request authority from the Court to satisfy obligations owed to the Employees and the Staffing Agencies on account of Wages and Fees, including, without limitation, to allow prepetition checks on account of Wages and Fees that were not cashed prior to the Petition Date to be honored on a post-petition basis notwithstanding the commencement of the Chapter 11 Cases.

*ii.     Bonus Program*

16.     In the ordinary course, the Debtors maintain a quarterly bonus program (the "Bonus Program") to drive performance among certain of their Employees at the director level or above. Eligible Employees receive 50% of their target bonus for their continued services for the company.

The other 50% of the eligible Employee's target bonus is tied to achievement of specific performance metrics. The bonus is paid six months in arrears.

17.     In light of the challenges facing the Debtors and the demands placed on their leadership team, the Debtors made certain prepetition payments under the Bonus Program in the ordinary course of business. The Debtors estimate that, as of the Petition Date, they do not have any past-due amounts owed on account of the Bonus Program, but that amounts are accruing under such programs that will be payable following the Petition Date. The amounts accrued as of the Petition Date on account of the Bonus Program will come due after the first thirty (30) days of the Chapter 11 Cases.

18.     Failure to administer the Bonus Program would damage employee morale when the dedication, confidence, and cooperation of the eligible Employees is most critical. The Debtors respectfully request authority, but not direction, upon entry of the Final Order, to continue to maintain the Bonus Program in the ordinary course during the administration of the Chapter 11 Cases, to provide bonuses in the ordinary course of business, and to honor obligations under the Bonus Program, regardless of when such obligations arose; *provided* that no bonus or incentive payments will be made to any insiders (as defined in section 101(31) of the Bankruptcy Code) unless separately authorized by the Court.

### iii.     *Employee Expenses*

19.     Prior to the Petition Date, and in the ordinary course of the Debtors' business, the Employees incurred, and continue to incur, various expenses on behalf of the Debtors in the scope of their employment, including, without limitation, expenses for meals, travel, car rentals, tuition reimbursement, relocation, and other business-related expenses (collectively, the "Employee Expenses"). All such expenses are incurred with the applicable Employee's understanding that he

or she will be reimbursed by the Debtors in accordance with the Debtors' reimbursement policy. In all cases, reimbursement is contingent on the Debtors' determination that the charges are for legitimate, reimbursable business expenses.

20.    Certain Employees incur the Employee Expenses personally, while others incur the Employee Expenses on corporate credit cards (the "Corporate Cards") issued by American Express. Although the Debtors pay the invoices for the Corporate Cards directly, the accounts are held in the names of individual Employees.  Therefore, to the extent that the Debtors fail to remit payment to American Express for valid and legitimate charges, the Employees may be personally liable for the same.  These expenses are ordinary course expenses that the Employees incur in performing their job functions.  It is essential to the continued operation of the Debtors' businesses that the Debtors be permitted to continue reimbursing, or making direct payments on behalf of, Employees for the Employee Expenses.

21.    It is difficult for the Debtors to determine the exact amount of Employee Expenses outstanding as of the Petition Date because, among other things, the Employees may have expenses that they have yet to submit to the Debtors for reimbursement.  On average, over the past year, the Debtors have paid approximately $20,000 per month on account of the Employee Expenses.  The Debtors believe that, as of the Petition Date, approximately $35,000 remains outstanding on account of Employee Expenses (excluding tuition reimbursement).

22.    In addition, the Debtors incur certain fees and expenses in connection with the maintenance of their Employee Expense reimbursement program.  Specifically, the Debtors pay American Express approximately $35 per card in annual fees on account of the Corporate Cards (the "Corporate Card Fees").  The Debtors do not believe that there are any outstanding Corporate Card Fees as of the Petition Date.

23.     To avoid harming the Employees who incurred the Employee Expenses, the Debtors seek authority, but not direction, to reimburse the Employee Expenses and pay amounts owed to American Express in the ordinary course of business and in accordance with their prepetition practices and policies, regardless of when such obligations accrued.

iv.     *Wage Deductions, Trust Fund Taxes, and Payroll Taxes*

24.     During each applicable pay period, the Debtors routinely deduct certain amounts from the Employees' pay, including, without limitation, pre-tax and after-tax deductions payable pursuant to certain of the Employee benefit plans discussed herein, such as the Employee's share of health care benefits, insurance premiums, retirement contributions, 401(k) loan repayment deductions, legally ordered deductions, and other miscellaneous deductions (collectively, the "Wage Deductions"), and forward those amounts to various third-party recipients.  On average, the Debtors have historically deducted approximately $100,000 in the aggregate in Wage Deductions from the Employees' pay per month.  The Debtors believe that, as of the Petition Date, they are current on amounts due to be remitted to the various third-party recipients on account of the Wage Deductions.  Accordingly, the Debtors seek authority to continue to forward prepetition Wage Deductions to the applicable third-party recipients on a postpetition basis in the ordinary course of their business, as routinely done prior to the Petition Date.

25.     The Debtors are required by law to withhold from the Employees' pay certain amounts related to, among other things, federal, state, local, and foreign income taxes and social security and Medicare taxes (collectively, the "Trust Fund Taxes") for remittance to the appropriate federal, state, local, or foreign taxing authorities.  The Debtors must then match from their own funds for social security and Medicare taxes and pay, based upon a percentage of gross payroll, additional amounts for state and federal unemployment insurance (the "Payroll Taxes" and, together

with Trust Fund Taxes, the "Employment Taxes").  Historically, on a monthly basis, the Debtors remit approximately $300,000 in Employment Taxes.  The Debtors believe that, as of the Petition Date, all amounts have been remitted on account of the Employment Taxes.

26.     By this Motion, the Debtors seek authority, but not direction, to remit Wage Deductions and Employment Taxes (together, "Deductions and Taxes") in the ordinary course of business, including, without limitation, amounts determined to be related to the period prior to the Petition Date.

**E.     Obligations on Account of Employee Benefits[4]**

27.     The Debtors provide their eligible Employees with a number of employee benefits in the ordinary course of business, including, without limitation:  (i) medical and prescription drug, dental, and vision insurance; (ii) paid sick and vacation days and other paid time off; (iii) retirement plans; and (iv) certain other miscellaneous employee benefits, including an employee assistance program, Life/AD&D coverage (defined below), short and long-term disability coverage, certain voluntary group insurance, tuition reimbursement, contributions to flexible spending accounts, and pet benefits program (collectively, the "Employee Benefits").

*i.     Health Benefits*

28.     The Debtors sponsor several health and welfare benefit plans, including medical and prescription, dental, and vision coverage, for certain of their Employees (collectively, the "Health Benefits").  Medical and prescription Health Benefits are provided through Horizon Blue Cross Blue Shield of New Jersey; dental and vision, through Guardian.  Employees make contributions in connection with the Health Benefits, which are withheld from their wages every payroll cycle.

---

[4] Employee benefits referenced in this section shall collectively be referred to as the "Benefits Programs" and, together with the Compensation Programs, the "Compensation and Benefits Programs."

26731548.13

The Debtors pay an aggregate amount of approximately $127,500 per month for Employees on account of the Health Benefits, a portion of which is funded by Employee withholdings.[5]  Certain of these amounts are attributable to the administrative costs of various insurance carriers who act as third party insurance administrators.

29.    The Debtors believe that, as of the Petition Date, they are current on amounts due in connection with the Health Benefits and on amounts owing under COBRA.  By this Motion, the Debtors seek authority to:  (i) continue to provide the Health Benefits to the Employees in the ordinary course of business; (ii) continue making contributions to such benefit programs; (iii) continue to pay amounts related thereto, including premiums and administrative costs (including, without limitation, those of the insurance carriers who act as third party insurance administrators); (iv) continue to pay amounts owing under COBRA; and (v) pay such amounts to the extent that they remain unpaid on the Petition Date.  Claims under the Health Benefits programs are fully paid by the respective insurer under the applicable program.

ii.    *Paid Time Off*

30.    The Debtors provide various forms of paid time off, including vacation pay, sick pay, holiday pay, and payments for various forms of leave to qualifying Employees as a paid time-off benefit ("Paid Time Off").

31.    The Debtors provide their Employees with a range of vacation leave related to such Employees' tenure with the Debtors, which ranges from a maximum accrual of 120 hours for Employees with less than five (5) years of tenure to 200 hours for Employees with more than ten

---

[5] As required by law, the Debtors also offer coverage under certain of their medical plans to certain former employees who have elected coverage in accordance with the requirements of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").  As of the Petition Date, five Employees have elected COBRA coverage and will continue to utilize COBRA coverage for the remainder of October 2021.  The Debtors intend for the relief requested herein to apply to COBRA coverage consistent with the Debtors' prepetition practices and the requirements of applicable law.

(10) years of tenure.  Employees may carry over up to 80 hours of Paid Time Off to the following year.  All other accrued but unused Paid Time Off is forfeited at the end of the calendar year. Employees have one full year to use Paid Time Off that has been carried over from the prior year; after December 31, Paid Time Off that has been carried over from the prior year is forfeited. Employees do not typically receive cash or money in lieu of accrued Paid Time Off.  However, in the event Employees voluntarily resign their employment and provide two weeks' written notice of such resignation, at separation of employment, such Employees are entitled to receive payment for any accrued Paid Time Off less any used Paid Time Off at their then-base rate of pay.  In addition, in the event of an Employee's termination without cause, or due to death or disability, Employees are entitled to receive payment for any accrued Paid Time Off less any used Paid Time Off at their then-base rate of pay.

32.     The Debtors estimate that, as of the Petition Date, approximately $500,000 in Paid Time Off for Employees is accrued but unpaid.  By this Motion, the Debtors respectfully request authority, but not direction, to continue to honor their Paid Time Off policies in the ordinary course of business, and to pay prepetition amounts related thereto in accordance with their policies and state law.

*iii.*     *Other Time-Off Policies*

33.     The Debtors also maintain policies for requests by eligible Employees for time off work, whether paid or unpaid, as the result of, among other things, jury or witness duty, military obligations, family and medical leave, and personal leave. In addition, the Debtors authorize leaves of absence in compliance with applicable federal and state laws.  For those requests, such as jury and witness duty, that require the Debtors to make cash payments in connection with these time-

26731548.13

off policies, the Debtors seek authorization to continue to make such cash payments in the ordinary course of business in accordance with these policies.

    *iv.*      *Severance Policy*

    34.      The Debtors do not maintain a formal severance pay policy for the majority of their Employees.  However, in their discretion, the Debtors do, on occasion, provide severance packages to certain Employees.

    *v.*      *The Retirement Plans*

    35.      The Debtors offer eligible American Employees a retirement savings plan pursuant to section 401 of the Internal Revenue Code (the "401(k) Plan").  The 401(k) Plan is maintained through Voya Retirement Insurance and Annuity Company, which charges the Debtors an administrative fee.

    36.      Historically, in the three-year period preceding the Petition Date, the Debtors withheld from wages of participating Employees' contributions to the 401(k) Plan of approximately $800,000 per year and make matching contributions of $300,000 per year.  As of the Petition Date, the Debtors estimate that approximately $5,000 has accrued for matching Retirement Plan contributions and administrative fees.  The Debtors respectfully request authority, but not direction, to maintain the Retirement Plans in the ordinary course during the administration of the Chapter 11 Cases, to make the necessary payroll deductions in the ordinary course of business, and to honor obligations under the Retirement Plans, regardless of when such obligations arose.

    *vi.*      *Additional Employee Benefits*

        *a.*      *Employee Assistance Program*

    37.      The Debtors offer an employee assistance program ("EAP") to Employees through Cigna.  The EAP provides Employees with professional and confidential consultation, information, and referrals on issues affecting their personal, family, or work life.  The Debtors do not separately

pay Cigna for the EAP.  The Debtors seek authority, but not direction, to continue the EAP in the ordinary course.

### b.    *Life Insurance & AD&D Insurance; Disability Coverage*

38.    The Debtors offer basic life and accidental death and dismemberment insurance (the "Life and AD&D Insurance") and short- and long-term disability coverage ("Disability Coverage") to eligible full-time Employees through Cigna.  Life and AD&D Insurance and Disability Coverage cost the Debtors approximately $8,000 in the aggregate per month for premiums and administrative expenses.  Approximately $2,000 of this cost is offset by Employee paycheck withholdings.  As of the Petition Date, the Debtors believe that they are current on amounts owed in connection with the Life and AD&D Insurance and Disability Coverage.  The Debtors seek authority, but not direction, to continue to pay in the ordinary course of business amounts associated with the Life and AD&D Insurance and Disability Coverage, regardless of when accrued.

### c.    *Other Insurance*

39.    Employees may elect to purchase additional life insurance coverage through Cigna (collectively, the "Voluntary Life Insurance").  The Voluntary Life Insurance is paid entirely by the Employees who elect to receive such coverage.  The Debtors seek authority, but not direction, to maintain the Voluntary Life Insurance in the ordinary course of business and to honor obligations thereunder, regardless of when accrued.

### d.    *Tuition Reimbursement*

40.    Eligible Employees with 6 months or more of service may receive financial assistance under the Debtors' tuition reimbursement program (the "Tuition Reimbursement Program").  The Tuition Reimbursement Program provides reimbursements to otherwise eligible Employees up to a maximum of $5,250 per calendar year, which is conditioned on the successful completion of a course with either a C- average or a "pass" if graded on a pass/fail election.  As of

26731548.13

the Petition Date, the Debtors do not believe any amounts are outstanding in connection with the Tuition Reimbursement Program, but seek to continue the program in the ordinary course of business.

>            e.    *Flexible Spending Accounts*

41.    Employees may elect to make tax-deductible contributions to healthcare, dependent care, and transit or parking flexible spending accounts (each, an "FSA") administered by PrimePay. The FSAs work similarly to a savings account—each pay period, funds are deducted from eligible Employees' pay on a pre-tax basis and deposited into the Employees' FSA.  The Debtors do not make contributions to the FSAs.  Historically, on an annual basis, the Debtors withhold from wages of participating Employees contributions to FSAs of approximately $75,000.  As of the Petition Date, the Debtors estimate that no amounts have been withheld from the Employees' wages that are not yet remitted to FSAs.  Historically, on an annual basis, the Debtors pay PrimePay $5,000 to administer the FSAs.  In addition, the Debtors are charged a fee of $4.20 per participant, per month, as well as an annual fee of $820 for compliance testing.  As of the Petition Date, the Debtors estimate that $1,000 is owed in connection with the administration of the FSAs.[6]  By this Motion, the Debtors seek authority, but not direction, to continue to provide the FSAs and pay amounts associated with the FSAs in the ordinary course of business, including prepetition amounts, regardless of when accrued.

>            f.    *Pet Benefit Plans*

42.    The Debtors offer Employees the opportunity to enroll in pet protection benefit plans (the "Pet Benefit Plans") provided by Pet Benefit Solutions and Pet Assure.  The Debtors do not make any contributions related to the Pet Benefit Plans.  The Pet Benefit Plans allow Employees to

---

[6]  This administration fee also covers administration of the Debtors' COBRA coverage practices.

enroll in a program at a fixed monthly cost to access discounted veterinary visits and pet medications. By this Motion, the Debtors seek authority, but not direction, to continue providing the Pet Benefit Plans in the ordinary course.

g.    *Identity Protection*

43.    In addition to the foregoing, the Debtors provide Employees with identity theft protection through YIG Administration. The cost of such program is covered by participating Employees. As of the Petition Date, the Debtors estimate that they do not owe any amounts on account of the identity protection program. Out of an abundance of caution, the Debtors request authority, but not direction, to continue the identity protection program in the ordinary course of business.

**F.    Obligations on Account of Workers' Compensation Program**

44.    Under applicable state law, the Debtors are required to maintain worker's compensation insurance programs to provide the Employees with workers' compensation insurance coverage for claims arising from or related to their employment with the Debtors (the "Workers' Compensation Program"). To implement the Workers' Compensation Program, the Debtors maintain a workers' compensation policy (the "WC Policy") through Travelers. The annual cost of the WC Policy is approximately $134,317 and the current policy provides coverage through January 31, 2022. Premiums under the WC Policy are paid in monthly installments. The first monthly installment was approximately $75,265, and was paid in February 2021. The remaining three installments are each approximately $40,000 and were paid or will be paid, as applicable, in April 2021, July 2021, and October 2021. The Debtors' deductible under the WC Policy is $1.0 million per incident. As of the Petition Date, the Debtors are current on their obligations under the WC Policy. There are four open claims under the WC Policy, totaling approximately $54,000.

45.     To ensure that claims incurred under the Workers' Compensation Program are satisfied, the Debtors must pay outstanding prepetition liabilities associated with the Workers' Compensation Program, as well as outstanding policy premiums under the WC Policy, as such amounts become due and owing.  To ensure that the Debtors comply with state law requirements and the *United States Trustee Chapter 11 Operating and Reporting Guidelines for Debtors in Possession*, the Debtors believe that the Workers' Compensation Program must continue in the ordinary course of business.

46.     Accordingly, the Debtors respectfully request authority, but not direction, in their sole discretion, to continue to maintain the Workers' Compensation Program in the ordinary course of business, and to pay prepetition amounts related thereto, including, without limitation, outstanding premiums, payments for workers' compensation claims, deductibles, fees owed for administrative costs, and other amounts required in connection with the program, as such amounts become due in the ordinary course of the Debtors' business.

**<u>RELIEF REQUESTED</u>**

47.     By this Motion, the Debtors respectfully request that the Court enter the Proposed Orders (i) authorizing, but not directing, the Debtors, in their sole discretion, and in accordance with their stated policies, to (a) pay, honor, or otherwise satisfy the Employee Wages and Benefits, including amounts and obligations related to the period prior to the Petition Date; (b)  continue their Benefits Programs in effect as of the Petition Date (and as may be amended, renewed, replaced, modified, revised, supplemented, and/or terminated from time to time in the ordinary course of business) and pay related administrative obligations; (ii) (a) authorizing, but not directing, the Debtors, in their sole discretion, and in accordance with their stated policies, to pay and/or honor any workers' compensation obligations and (b) waiving the automatic stay as it applies to Workers'

Compensation Claims; (iii) authorizing the Banks[7] to honor and process check and electronic transfer requests related to the foregoing; and (iv) granting related relief

48.    Finally, the Debtors respectfully request that the Court schedule a final hearing on the Motion within thirty (30) days of the Petition Date, or as soon thereafter as the Court's schedule permits (such period, the "Interim Period.")

## BASIS FOR RELIEF

### A.    The Court Should Authorize, but not Direct, the Debtors, in Their Sole Discretion, to Pay or Otherwise Honor the Employee Wages and Benefits

49.    The Court should authorize, but not direct, the Debtors, in their sole discretion, to pay or otherwise honor the Employee Wages and Benefits because (a) payment of certain prepetition Employee Obligations is required by law, (b) payment of prepetition Employee Obligations is appropriate under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, (c) maintaining compensation and benefits programs and paying prepetition Employee Obligations and related Payroll costs is a sound exercise of the Debtors' business judgment, and (d) payment of prepetition Employee Obligations is appropriate under section 105(a) of the Bankruptcy Code and the doctrine of necessity.

        i.    *Payment of Certain Prepetition Employee Obligations Is Required by Law.*

50.    Sections 541(b)(7) and 541(d) of the Bankruptcy Code provide grounds for granting the relief requested with respect to Deductions and Taxes.  The amounts related to the Deductions and Taxes include amounts earmarked by law, including for taxes and support payments, and Employee contributions to the Compensation and Benefits Programs.  These amounts are held in

---

[7]  The term "Banks" has the meaning ascribed to it in the *Debtors' Motion for Interim and Final Orders Authorizing: (A) Continued Use of Cash Management System; (B) Maintenance of Existing Bank Accounts; (C) Continued Use of Existing Business Forms; (D) Continued Performance of Intercompany Transactions in the Ordinary Course of Business and Grant of Superpriority Administrative Expense Status for Postpetition Intercompany Claims; and (E) Interim Suspension Of Section 345(b) Deposit And Investment Requirements*, filed concurrently herewith.

26731548.13

trust and are not part of the Debtors' estates, and are required to be paid.  *See* 11 U.S.C. § 541(b), (d); 26 U.S.C. § 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its Employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes).  Failure to pay could subject the Debtors' directors and officers to personal liability. *See In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).

51.     Because many of the Deductions and Taxes are not property of the Debtors' estates, their application or payment for their intended purposes will not adversely affect the Debtors' estates or their creditors.  To prevent potentially irreparable harm to Employee morale and, in certain cases, to comply with the clear and unambiguous requirements of section 541(b)(7) of the Bankruptcy Code, the Debtors desire to apply and remit the Deductions and Taxes for the purposes for which the Deductions and Taxes were taken.

52.     Additionally, the Deductions and Taxes principally represent portions of the Employees' pay that governments (in the case of the Trust Fund Taxes and Payroll Taxes), the Employees (in the case of the voluntary Wage Deductions), and certain authorities (in the case of the involuntary Wage Deductions) have designated for deduction from the Employees' pay.  The Debtors' failure to pay these amounts could result in hardship to certain Employees and an administrative burden for the Debtors.  Indeed, the Debtors would expect inquiries from garnishors regarding any failure by the Debtors to submit, among other things, child support and alimony payments that are not the Debtors' property but, rather, have been withheld from the Employees' pay on such parties' behalf.  Moreover, if the Debtors cannot remit these amounts, the Employees may face legal action due to the Debtors' failure to submit such payments.

  *ii.*  *Payment of Prepetition Employee Obligations Is Appropriate Under Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.*

  53. Pursuant to section 507(a)(4) of the Bankruptcy Code, each Employee may be granted a priority claim for:

> allowed unsecured claims, but only to the extent of $13,650 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for –
>
> (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
>
> (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor….

11 U.S.C. § 507(a)(4).

  54. Likewise, under section 507(a)(5) of the Bankruptcy Code, Employees may ultimately be granted a priority claim for:

> allowed unsecured claims for contributions to an employee benefit plan –
>
> (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
>
> (B) for each such plan, to the extent of –
>
>   (i) the number of employees covered by each such plan multiplied by $13,650; less
>
>   (ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

*Id.* at § 507(a)(5).

55.    The Debtors believe that the Unpaid Wages are entitled to priority status under section 507(a)(4) of the Bankruptcy Code to the extent such compensation does not exceed $13,650 per Employee.  The Debtors would therefore be required to pay these claims in full under any chapter 11 plan filed in these Chapter 11 Cases and, in any event, they must be paid before any of the Debtors' general unsecured obligations may be satisfied.  *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for wages, salaries, and commissions, and certain allowed unsecured claims for contributions to an employee benefit plan).  Thus, granting the relief requested herein would only affect the timing, and not the amount, of the payment of such amounts to the extent that they constitute priority claims.

   iii.    *Maintaining Compensation and Benefits Programs and Paying Prepetition Employee Obligations and Related Payroll Costs Is a Sound Exercise of the Debtors' Business Judgment.*

56.    Section 363(b) of the Bankruptcy Code permits a debtor to "enter into transactions… in the ordinary course of business" and use estate property "other than in the ordinary course of business" after notice and a hearing.  11 U.S.C. § 363(b)(1).

57.    Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions."  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted) (requiring that the debtor show a "sound business purpose" to justify its actions under section 363 of the Bankruptcy Code); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987).  Further, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616

(Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

58.    The Debtors have determined, in the sound exercise of their business judgment, that continuing their Compensation and Benefits Programs and paying the prepetition Employee Obligations (and related Payroll Costs) is critical to the success of these Chapter 11 Cases.  Any delay or disruption in the provision of the Compensation and Benefits Programs likely will destroy the Debtors' relationships with the Employees and will irreparably impair workforce morale at the very time when the dedication, confidence and cooperation of the Employees is most critical.  In addition, bolstering the morale of the Employees and ensuring the uninterrupted availability of their services will assist the Debtors in maintaining a "business as usual" atmosphere to the extent possible and preserving the Debtors' ability to continue to operate their business and preserve relationships with customer and other important constituencies.  Finally, the Debtors must continue their corporate policies of permitting certain Employees to incur Business Expenses and thereafter seek reimbursement by submitting appropriate invoices to maintain necessary oversight and quality control and enable many key Employees to perform their jobs effectively.

59.    Accordingly, there can be no doubt that the Debtors must do their utmost to retain their workforce by, among other things, continuing to honor all wage, benefit and related obligations, including any amounts arising under the Compensation and Benefits Programs that accrued prepetition, and will accrue in the Interim Period.

60.    Therefore, the Debtors believe they are permitted to pay all postpetition amounts due pursuant to the Compensation and Benefits Programs as such actions are in the ordinary course

26731548.13

of business.  Out of an abundance of caution, however, the Debtors request entry of an order

granting the relief requested herein to avoid any disruptions to their business operations.

     *iv.*     *Payment of Prepetition Employee Obligations Is Appropriate under Section 105(a)*
                    *of the Bankruptcy Code and the Doctrine of Necessity.*

     61.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title."

11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may permit payments of

prepetition obligations prior to confirmation of a plan and emergence from chapter 11 when

essential to the continued operation of a debtor's business.  Specifically, the Court may use its

power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations

pursuant to the "doctrine of necessity."

     62.     Under the "doctrine of necessity," bankruptcy courts may authorize the payment of

prepetition claims if such payment is essential to the continued operation of the debtor.  *In re Lehigh*

*and New England Railway Co.,* 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize

payment of prepetition claims when there "is the possibility that the creditor will employ an

immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467

F.2d 100, 102 n.1 (3d Cir. 1972) (recognizing necessity of payment doctrine permits "immediate

payment of claims of creditors where those creditors will not supply services or material essential

to the conduct of the business until its pre-reorganization claims have been paid"); *In re Just for*

*Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (noting that, in the Third Circuit, debtors may pay

prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys.,*

*Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

     63.     Although the "doctrine of necessity" predates the Bankruptcy Code, *see*

*Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286, 309 (1882), the modern application of the

doctrine of necessity is grounded in specific provisions of the Bankruptcy Code, including sections 105(a), 1107(a) and 1108. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (fiduciary duties implicit in section 1107(a) of the Bankruptcy Code justify the "preplan satisfaction of a prepetition claim" where necessary to preserve going concern value).   The doctrine, largely unchanged from the Court's reasoning in *Miltenberger*, is a widely accepted component of bankruptcy jurisprudence. *See In re Just for Feet, Inc.*, 242 B.R. at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy the debtor's business by refusing to deliver new inventory on the eve of debtor's key sales season); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (Bankr. S.D.N.Y. 1987) (affirming order authorizing payment of prepetition wages, salaries, expenses and benefits); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546-47 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agreed to provide postpetition trade credit).

64.     Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition employee obligations in appropriate circumstances.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are authorized to operate the business while maintaining a "fiduciary duty to act in the best interest of the estate as a whole, including its creditors, equity interest holders and other parties in interest." *LaSalle Nat'l Bank v. Perelman*, 82 F. Supp. 2d 279, 292 (D. Del. 2000).  Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *In re CoServ, LLC*, 273 B.R. at 297.  Some courts have noted there are instances in which a debtor can fulfill this fiduciary duty "by the preplan satisfaction of a prepetition claim." *Id.*  Here, the Debtors are operating as debtors in possession consistent with

sections 1107(a) and 1108 of the Bankruptcy Code and payment of the prepetition Employment

Obligations is necessary to protect, preserve the Debtors' value and maximize their value for all

creditors and stakeholders.

65.     Paying prepetition Employee Obligations and any prepetition Payroll Costs will

benefit the Debtors' estates and their stakeholders by allowing the Debtors' business operations to

continue without interruption.  The Debtors believe that without these payments, the Employees

may become demoralized and unproductive because of the significant financial strain and other

hardship many of the Employees will experience as a result.  Indeed, the Debtors believe that

without the requested relief, it is possible that otherwise loyal Employees at all levels of the

Debtors' organization will leave for alternative employment.  Such a development would deplete

the Debtors' workforce, hindering the Debtors' ability to implement their reorganization efforts.

The loss of valuable Employees and the resulting need to recruit new personnel to replenish the

Debtors' workforce would be distracting and counterproductive at this critical time when the

Employees continued dedication, confidence, and cooperation are most critical to the Debtors and

the success of these Chapter 11 Cases.  Further, if the Debtors lose valuable Employees and disrupt

the business relationship with the Staffing Agencies, they will incur significant expenses in locating,

recruiting and training replacements that would far exceed the costs of the Compensation and

Benefits Programs for a lost Employee.

66.     Moreover, the vast majority of the Employees rely on their full compensation or

reimbursement of their wages or expenses to continue to pay their daily living expenses.  These

Employees will be exposed to significant financial difficulties if the Debtors are not permitted to

pay Employee Wages and Benefits.  The Debtors believe that their ability to operate their businesses

and the success of these Chapter 11 Cases may be severely jeopardized if the Debtors are not

immediately granted authority to pay the Employee Wages and Benefits on the terms set forth in the Proposed Orders.

**B.      The Court Should Authorize the Debtors to Pay or Honor any Workers' Compensation Obligations and Should Waive the Automatic Stay as it Applies to Workers' Compensation Claims**

67.      It is imperative that the Debtors be permitted to continue to pay and honor any and all obligations arising under the Workers' Compensation Program (the "Workers' Compensation Obligations"), including all prepetition premiums, claims (including, without limitation, claim settlements), losses, and expenses and to pay all costs and expenses related to the administration, servicing, processing, adjusting, paying, and settling claims and losses under the Workers' Compensation Program.

68.      Section 362(a)(1) of the Bankruptcy Code operates to stay, among other things:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1).  Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." 11 U.S.C. § 362(d)(1).

69.      To the extent any current or former Employees hold claims pursuant to the Workers' Compensation Program, the Debtors request authority under section 362(d) of the Bankruptcy Code to permit Employees to proceed with their workers' compensation claims in the appropriate judicial or administrative forum.

70.      Maintaining the Workers' Compensation Program is justified because applicable state law mandates this coverage.  Further, with respect to any claims related to the Workers'

Compensation Program, the risk that eligible claimants will not receive timely payments with respect to employment-related injuries could have a devastating effect on the financial well-being and morale of the Employees and their willingness to remain in the Debtors' employ.  Entry of the Proposed Orders will alleviate any such concerns, as it will allow the Debtors to avoid any unexpected or inopportune interruptions to their business operations, and enable them to maximize the value of the estates for the benefit of all stakeholders.

71.    For all of the foregoing reasons, the Debtors respectively submit that the relief requested herein is necessary, prudent, and in the best interests of the Debtors, their estates, and creditors, and should therefore be granted.

**C.    The Court Should Authorize the Banks to Honor and Process the Debtors' Payments on Account of the Employee Wages and Benefits**

72.    The Debtors respectfully request that the Court authorize and direct the  Banks to receive, process, honor, and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the claims the Debtors request authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before, on, or after the Petition Date, provided that funds are available in the Debtors' accounts to cover the checks and fund transfers.  The Debtors also request that the Court authorize the Banks to rely on the Debtors' designation or representation that any particular check has been approved by the Proposed Orders.

73.    The Debtors have sufficient liquidity to pay the amounts set forth in this Motion in the ordinary course of business and have implemented controls to ensure that prepetition claims

will not be paid out except as authorized by the Court.  The Debtors therefore submit that the payment-processing procedures described in this Motion are appropriate.

## SATISFACTION OF BANKRUPTCY RULE 6003(b)

74.    The Court may grant the relief requested in this Motion immediately if the relief "is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003(b); *see also In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008).  The Third Circuit has interpreted the language "immediate and irreparable harm" in the same context of preliminary injunctions.  In that context, the Third Circuit has instructed that irreparable harm is that which "cannot be redressed by a legal or an equitable remedy following a trial."  *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).  The Debtors believe an orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested would disrupt the Debtors' operations and cause irreparable harm.  The success of Debtors' reorganization efforts will require the continued focus and dedication of the Employees, as any deterioration in Employee morale or significant loss in workforce will have an immediate and adverse impact on the Debtors' ability to, among other things, continue to operate their business without any unexpected or inopportune interruption and to successfully prosecute the Chapter 11 Cases. Further, failure to receive the requested relief at the outset of these Chapter 11 Cases would disrupt the "business as usual" message that is critical to the Debtors' ability to stabilize their operations and maintain Employee confidence during this process.  Thus, if the relief requested herein is not granted, the failure to satisfy the Employee Wages and Benefits would cause the Debtors' estates

immediate and irreparable harm by detracting from, and potentially derailing, the Debtors' reorganization efforts.

75.     For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## **REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)**

76.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As set forth throughout this Motion, any delay in paying the Employee Wages and Benefits would be detrimental to the Debtors, their estates, and their creditors.  Indeed, the Debtors' ability to operate their businesses without any unexpected or inopportune interruption requires, in large part, an able and willing workforce, which the Debtors currently have in the Employees.  For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Orders.

77.     To implement the foregoing immediately, the Debtors also respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a), to the extent they are applicable to the Proposed Orders.

## **RESERVATION OF RIGHTS**

78.     Nothing in the Proposed Orders or this Motion (i) is intended or shall be deemed to constitute the Debtors' assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates to contest

the validity, priority, or amount of any claim against the Debtors and their estates, or (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (iv) shall be construed as the Debtors' promise to pay a claim or continue any applicable programs postpetition, which decision shall be in the sole discretion of the Debtors.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **NOTICE**

79.    Notice of this Motion has been or will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the thirty (30) largest unsecured claims on a consolidated basis against the Debtors; (iii) counsel for the First Lien Agent for the Debtors' prepetition secured lenders; (iv) counsel for the Second Lien Agent for the Debtors' prepetition secured lenders; (v) counsel for the DIP Agents; (vi) counsel to the Indenture Trustee for the Debtors' Series D zero-coupon Convertible Senior Notes due 2023; (vii) the Internal Revenue Service; (viii) the Securities and Exchange Commission; (ix) the Office of the United States Attorney for the District of Delaware; and (x) the Banks.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Debtors request that the Court enter the Proposed Orders, substantially

in the forms attached as Exhibits A and B, respectively, granting the relief requested herein and

such other and further relief as is just and proper.

Dated:   October 14, 2021           YOUNG CONAWAY STARGATT & TAYLOR, LLP
         Wilmington, Delaware

                                     */s/ Betsy L. Feldman*
                                     Michael R. Nestor (No. 3526)
                                     Matthew B. Lunn (No. 4119)
                                     Shane M. Reil (No. 6195)
                                     S. Alexander Faris (No. 6278)
                                     Betsy L. Feldman (No. 6410)
                                     Rodney Square
                                     1000 North King Street
                                     Wilmington, Delaware 19801
                                     Telephone:  (302) 571-6600
                                     Facsimile:  (302) 571-1253
                                     Email:  mnestor@ycst.com
                                            mlunn@ycst.com
                                            sreil@ycst.com
                                            afaris@ycst.com
                                            bfeldman@ycst.com

                                     *Proposed Counsel to the Debtors and*
                                     *Debtors in Possession*

26731548.13

31

## EXHIBIT A

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TELIGENT, INC., *et al.*,[1] | Case No. 21-11332 (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. ___** |

## INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) PAY PREPETITION EMPLOYEE WAGES, SALARIES, AND OTHER COMPENSATION AND (B) CONTINUE EMPLOYEE BENEFITS OBLIGATIONS AND PAY RELATED ADMINISTRATIVE OBLIGATIONS; (II) AUTHORIZING THE DEBTORS TO PAY AND/OR HONOR ANY WORKERS' COMPENSATION OBLIGATIONS AND WAIVING THE AUTOMATIC STAY AS IT APPLIES TO WORKERS' COMPENSATIONS CLAIMS; (III) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO; AND (IV) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the Debtors for the entry of this interim order and a final order (i) authorizing, but not directing, the Debtors, in their sole discretion, and in accordance with their stated policies, to (a) pay, honor, or otherwise satisfy the Employee Wages and Benefits, including amounts and obligations related to the period prior to the Petition Date; and (b) continue their Benefits Programs in effect as of the Petition Date (and as may be amended, renewed, replaced, modified, revised, supplemented, and/or terminated from time to time in the ordinary course of business) and pay related administrative obligations; (ii) (a) authorizing, but not directing, the Debtors, in their sole discretion, and in accordance with their stated policies, to pay and/or honor any workers' compensation obligations and (b) waiving the automatic stay as it applies to Workers' Compensation Claims; (iii) authorizing the Banks to honor and process check and

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Teligent, Inc. (5758); Igen, Inc. (7443); Teligent Pharma, Inc. (1639); and TELIP LLC (8395).  The Debtors' corporate headquarters is located at 33 Wood Ave, 7th Floor, Iselin, NJ 08830.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

electronic transfer requests related to the foregoing; and (iv) granting related relief; and upon consideration of the First Day Declaration; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and this Court having found that venue of the Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given; and this Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and upon the record in the Chapter 11 Cases and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED as set forth herein on an interim basis.

2.      The Debtors are authorized, but not directed, in their sole discretion, to:  (i) pay, honor, or otherwise satisfy amounts and obligations on account of the Employee Wages and Benefits in the ordinary course of their business, including, without limitation, any amounts and obligations related to the period prior to the Petition Date, any amounts due to ADP and Staffing Agencies, and any amounts on account of the Trust Fund Taxes and Payroll Taxes as required by federal, state, local, and/or foreign tax law; and (ii) allow prepetition checks on account of Wages and Fees that were not cashed prior to the Petition Date to be honored on a post-petition basis

26731548.13

2

notwithstanding the commencement of the Chapter 11 Cases; *provided*, *however*, that:  (a) no payment to any Employee on account of Wages and Fees shall exceed, in the aggregate, the $13,650 statutory cap provided for under section 507(a)(4) of the Bankruptcy Code; and (b) no severance shall be paid absent the consent of the DIP Agents (as defined in the DIP Order); and (c) subject to the DIP Budget (as defined in the DIP Order), the aggregate amount of payments made on account of prepetition Employee Wages and Benefits shall not exceed $526,000 pending entry of the Final Order.

3.      Subject to Paragraph 2 of this Interim Order, the Debtors are authorized, in their sole discretion, in the ordinary course of their business, to (a) continue to pay, honor, or otherwise satisfy Wages and Fees, Employee Expenses, and Paid Time Off; (b) withhold and remit to the applicable third-parties Deductions and Taxes; and (c) administer the Employee Benefits and the Workers' Compensation Program.

4.      The Debtors are authorized, in their sole discretion, and in the ordinary course of business, to continue to utilize and pay the Staffing Agencies; *provided*, *however*, that no payment to any individual Supplemental Worker on account of Fees shall exceed the $13,650 statutory cap provided for under section 507(a)(4) of the Bankruptcy Code.

5.      Notwithstanding any provision in the Motion or this Interim Order to the contrary, this Interim Order does not authorize (a) any payments under the Bonus Program or (b) any payments that may implicate the provisions of section 503(c) of the Bankruptcy Code, including (i) any bonus or severance obligations, or (ii) obligations to cash out unpaid Paid Time Off upon termination of an Employee, unless applicable nonbankruptcy law requires such payment; *provided* that nothing in this Interim Order shall prejudice the Debtors' ability to seek approval of such relief pursuant to section 503(c) of the Bankruptcy Code at a later time.  Nothing in the Interim Order

shall approve or sanction the pre-petition payments of any bonuses or other payments made under a key employee incentive/retention program.

6.      The Banks are authorized, when requested by the Debtors, in the Debtors' sole discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Interim Order.

7.      A final hearing on the relief sought in the Motion shall be conducted on _____, 2021 at _____ (ET) (the "Final Hearing").  Any party-in-interest objecting to the relief sought at the Final Hearing or the Final Order shall file and serve a written objection, which objection shall be served upon (i) proposed counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, DE 19801 (Attn: Matthew B. Lunn, Esq. (mlunn@ycst.com) and Shane M. Reil, Esq. (sreil@ycst.com)); (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Room 2207, Wilmington, DE 19801 (Attn: Richard L. Schepacarter, Esq. (Richard.schepacarter@usdoj.gov) and David L. Buchbinder, Esq. (David.l.buchbinder@usdoj.gov)); (iii) co-counsel for the administrative agent and lenders under the Debtors' prepetition first lien credit facility and DIP revolving credit facility, Latham & Watkins LLP, 355 South Grand Avenue, Suite 100, Los Angeles, CA 90071 (Attn: Ted A. Dillman, Esq. (ted.dillman@lw.com) and Jason R. Bosworth, Esq. (Jason.Bosworth@lw.com )); (iv) co-counsel for the administrative agent and lenders under the Debtors' prepetition second lien credit facility

and DIP new money term loan facility, Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178 (Attn: Frederick F. Eisenbiegler, Esq. (frederick.eisenbiegler@morganlewis.com) and Kurt A. Mayr, Esq. (kurt.mayr@morganlewis.com)); (v) local counsel for the First Lien and Second Lien Agents for the Debtors' prepetition secured lenders, Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, DE 19899 (Attn:  Robert J. Dehney, Esq. (rdehney@morrisnichols.com)); (vi) counsel to the Indenture Trustee for the Debtors' Series D zero-coupon Convertible Senior Notes due 2023, Grushko & Mittman, P.C., 515 Rockaway Avenue, Valley Stream, NY 11581 (Attn: Edward M. Grushko, Esq. (Ed@grushkomittman.com)); and (vii) counsel to any statutory committee appointed in the Chapter 11 Cases, in each case so as to be received no later than _____, 2021 at 4:00 p.m. (ET). If no objections to the entry of the Final Order are timely filed, this Court may enter the Final Order without further notice or a hearing.

8.      Nothing in this Interim Order (i) is intended or shall be deemed to constitute the Debtors' assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates to contest the validity, priority, or amount of any claim against the Debtors and their estates, or (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (iv) shall be construed as the Debtors' promise to pay a claim or continue any applicable programs postpetition, which decision shall be in the sole discretion of the Debtors.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

26731548.13

9.      The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

10.     The requirements of Bankruptcy Rule 6003(b) are satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

11.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be effective and enforceable immediately upon its entry.

12.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

13.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

26731548.13

**<u>EXHIBIT B</u>**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TELIGENT, INC., *et al.*,[1] | Case No. 21-11332 (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. ___ & ___** |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) PAY PREPETITION
EMPLOYEE WAGES, SALARIES, AND OTHER COMPENSATION AND
(B) CONTINUE EMPLOYEE BENEFITS OBLIGATIONS AND PAY RELATED
ADMINISTRATIVE OBLIGATIONS; (II) AUTHORIZING THE DEBTORS TO PAY
AND/OR HONOR ANY WORKERS' COMPENSATION OBLIGATIONS AND
WAIVING THE AUTOMATIC STAY AS IT APPLIES TO WORKERS'
COMPENSATIONS CLAIMS; (III) AUTHORIZING BANKS TO HONOR
AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS
RELATED THERETO; AND (IV) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the Debtors for the entry of this final

order (i) authorizing, but not directing, the Debtors, in their sole discretion, and in accordance with

their stated policies, to (a) pay, honor, or otherwise satisfy the Employee Wages and Benefits,

including amounts and obligations related to the period prior to the Petition Date; and (b) continue

their Benefits Programs in effect as of the Petition Date (and as may be amended, renewed, replaced,

modified, revised, supplemented, and/or terminated from time to time in the ordinary course of

business) and pay related administrative obligations; (ii) (a) authorizing, but not directing, the

Debtors, in their sole discretion, and in accordance with their stated policies, to pay and/or honor

any Workers' Compensation Obligations and (b) waiving the automatic stay as it applies to

workers' compensation claims; (iii) authorizing the Banks to honor and process check and electronic

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Teligent, Inc. (5758); Igen, Inc. (7443); Teligent Pharma, Inc. (1639); and TELIP LLC (8395).  The Debtors' corporate headquarters is located at 33 Wood Ave, 7th Floor, Iselin, NJ 08830.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

transfer requests related to the foregoing; and (iv) granting related relief; and upon consideration of the First Day Declaration; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and this Court having found that venue of the Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given; and this Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and upon the record in the Chapter 11 Cases and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and this Court having entered that certain *Interim Order (I) Authorizing, But Not Directing, the Debtors, in Their Sole Discretion, and in Accordance With Their Stated Policies, to (A) Pay, Honor, or Otherwise Satisfy the Employee Wages and Benefits, Including Amounts and Obligations Related to the Period Prior to the Petition Date; (B) Continue Their Benefits Programs in Effect as of the Petition Date (and as May Be Amended, Renewed, Replaced, Modified, Revised, Supplemented, and/or Terminated From Time to Time in the Ordinary Course of Business) and Pay Related Administrative Obligations; (II) (A) Authorizing, but not Directing, the Debtors, in Their Sole Discretion, and in Accordance With Their Stated Policies, to Pay and/or Honor Any Workers' Compensation Obligations and (B) Waiving the Automatic Stay as it Applies to Workers' Compensation Claims; (III) Authorizing the Banks to Honor and Process*

26731548.13

2

*Check and Electronic Transfer Requests Related to the Foregoing; and (IV) Granting Related Relief*;

[D.I. ____] (the "Interim Order"); and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.        The Motion is GRANTED as set forth herein.

2.        The Debtors are authorized, but not directed, in their sole discretion, to: (a) pay, honor, or otherwise satisfy amounts and obligations on account of the Employee Wages and Benefits in the ordinary course of their business, including, without limitation, any amounts and obligations related to the period prior to the Petition Date, any amounts due to ADP and Staffing Agencies, and any amounts on account of the Trust Fund Taxes and Payroll Taxes as required by federal, state, local, and/or foreign tax law; and (b) allow prepetition checks on account of Wages and Fees that were not cashed prior to the Petition Date to be honored on a post-petition basis notwithstanding the commencement of the Chapter 11 Cases; *provided*, *however*, that:  (a) no payment to any Employee on account of Wages and Fees shall exceed, in the aggregate, the $13,650 statutory cap provided for under section 507(a)(4) of the Bankruptcy Code; (b) no severance shall be paid absent the written consent of the DIP Agents; and (c) subject to the DIP Budget (as defined in the DIP Order), the aggregate amount of payments made on account of prepetition Employee Wages and Benefits, inclusive of the amount of payments approved by the Interim Order, shall not exceed $1,576,000 unless further ordered by this Court.

3.        Subject to Paragraph 2 of this Final Order, the Debtors are authorized, in their sole discretion, in the ordinary course of their business, to:  (a) continue to pay, honor, or otherwise satisfy Wages and Fees, Employee Expenses, and Paid Time Off; (b) withhold and remit to the applicable third-parties Deductions and Taxes; and (c) administer the Employee Benefits and the Workers' Compensation Program.

26731548.13

3

4.      The Debtors are authorized, in their sole discretion, and in the ordinary course of business, to continue to utilize and pay the Staffing Agencies; *provided*, *however*, that no payment to any individual Supplemental Worker on account of Fees shall exceed the $13,650 statutory cap provided for under section 507(a)(4) of the Bankruptcy Code.

5.      Notwithstanding any provision in the Motion or this Final Order to the contrary, this Final Order does not authorize any payments that may implicate the provisions of section 503(c) of the Bankruptcy Code.  The Debtors are authorized, but not directed, to continue to maintain the Bonus Program in the ordinary course during the administration of the Chapter 11 Cases, to provide bonuses in the ordinary course of business, and to honor obligations under the Bonus Program, regardless of when such obligations arose.  The Debtors will seek approval of any insider bonus or incentive programs, if any, under separate motion under section 503(c) of the Bankruptcy Code and nothing herein shall prejudice the Debtors' ability to seek such relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

6.      The Banks are authorized, when requested by the Debtors, in the Debtors' sole discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Final Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Final Order.

7.      Nothing in this Final Order (i) is intended or shall be deemed to constitute the Debtors' assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an

26731548.13

4

admission as to the validity of any claim against the Debtors and their estates, (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates to contest the validity, priority, or amount of any claim against the Debtors and their estates, or (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (iv) shall be construed as the Debtors' promise to pay a claim or continue any applicable programs postpetition, which decision shall be in the sole discretion of the Debtors.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

8.      The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

9.      The requirements of Bankruptcy Rule 6003(b) are satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

10.      Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be effective and enforceable immediately upon its entry.

11.      Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

12.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.

26731548.13