**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TELIGENT, INC., *et al.*,[1] | Case No. 21-11332 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS, PURSUANT TO SECTIONS 105(a), 363(b), 503(b), 1107(a), AND 1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) CRITICAL VENDORS, AND (B) LIENHOLDERS; (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO; AND (III) GRANTING CERTAIN RELATED RELIEF**

The above-captioned affiliated debtors and debtors in possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for the entry of interim and final orders, substantially in the forms attached hereto as Exhibit A (the "Interim Order") and Exhibit B (the "Final Order," and together with the Interim Order, the "Proposed Orders"), respectively, pursuant to sections 105(a), 363(b), 503(b), 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), (i) authorizing, but not directing, the Debtors, in their sole discretion, to pay, in the ordinary course of business:  (a) certain prepetition claims of shippers, warehousemen, and other lien claimants (whose claims shall collectively be identified herein collectively as the "Lien Claims"); and (b) prepetition claims of certain critical vendors and service providers (collectively, the "Critical Vendors," whose claims shall be identified herein as the "Critical Vendor Claims"); and (ii) authorizing banks and other financial institutions (collectively, the "Banks") to honor and process check and electronic transfer requests related to

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Teligent, Inc. (5758); Igen, Inc. (7443); Teligent Pharma, Inc. (1639); and TELIP LLC (8395).  The Debtors' corporate headquarters is located at 33 Wood Ave, 7th Floor, Iselin, NJ 08830.

the foregoing.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Vladimir Kasparov in Support of Chapter 11 Petitions and First-Day Motions* (the "First Day Declaration"),[2] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b), 503(b), 1107(a), and 1108 of the Bankruptcy Code, and Local Rule 9013-1(m).

## BACKGROUND

### A.      General Background

3.      On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

have been appointed in the Chapter 11 Cases and no request has been made for the appointment of a trustee or an examiner.

4.      Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the First Day Declaration.

**B.      Critical Vendor Claims**

5.      In the ordinary course of business, the Debtors engage the Critical Vendors to provide various goods and services essential to the production and distribution of their products. The Critical Vendors include companies that are key distributors of the Debtors' products, and if the loss of one or more of the distributors is met with a delay or inability to secure an alternative distribution source for end users, it could have a material impact on the Debtors' revenue, business, financial condition and results of operations.  The Debtors have a good business relationship with these distributors, but a change in purchase patterns, a decrease in inventory levels, an increase in the return of products, delays in purchasing products and delays in payment for products to one or more of these distributors could have a material negative impact on the Debtors' revenue, business, financial condition and results of operations. The Debtors' business depends on, among other things, the Debtors' ability to retain their Critical Vendors and maintain their reputation and customer loyalty.  To preserve the value of their business for the benefit of all stakeholders, the Debtors need to be able to assure their customers, vendors, services providers, and employees that, notwithstanding the filing of the Chapter 11 Cases, they will continue to operate at the highest level.

6.      To identify the Critical Vendors, the Debtors have reviewed their accounts payable and prepetition vendor lists to identify those creditors most essential to the Debtors' operations pursuant to the following criteria:  (i) whether there is an alternative source for the goods or

services that can be acquired within a reasonable amount of time; (ii) whether there is a unique process or special knowledge of the Debtors that the vendor has possessed over time that no one else has; (iii) whether the vendor's products have been pre-approved for use in the Debtors' end product by the Debtors' customers; and (iv) whether a vendor meeting any of the foregoing criteria is able or likely to refuse to provide goods or services to the Debtors postpetition if its prepetition balances are not paid.

7.      In many instances, the Critical Vendors provide services or goods unique to the Debtors that could not be easily or quickly obtained from another vendor or are sole-source providers. In addition, although certain services or goods provided by the Critical Vendors could be obtained elsewhere, the Debtors do not believe that alternative providers could be found within a reasonable amount of time or would be acceptable to their customers. Problems with any of the Debtors' manufacturers and suppliers could result in the failure to produce, or a delay in production of, adequate supplies of the components necessary to manufacture the Debtors' pharmaceutical products. Accordingly, it is essential that the Debtors be able to maintain their business relationships with, and honor outstanding payment obligations to, the Critical Vendors given the critical role that they play in the Debtors' business. To prevent the commencement of the Chapter 11 Cases from causing an unexpected or inopportune interruption to their business operations, the Debtors are seeking to pay Critical Vendor Claims to ensure the Debtors' continued receipt of goods and services and favorable credit terms from the Critical Vendors.

8.      Further, in order to ensure the quality of drug products, the United States Food and Drug Administration ("FDA") carefully monitors a drug manufacturer's compliance with its Current Good Manufacturing Practice ("CGMP") regulations. For the Debtors to remain in compliance with the CGMP regulations, each of their manufacturers and suppliers must also be in

compliance.  To the best of the Debtors' knowledge and belief, the Debtors' current manufacturers and suppliers, among them the Critical Vendors, have each passed the CGMP audit and certification.  To replace any of these vendors would require the Debtors to undertake an exhaustive review process to ensure the manufacturing facilities and processes of the new prospective vendor were also in compliance with the CGMP regulations.  Such process may take up to a year to complete under pandemic-free circumstances, and would likely take even longer currently.

**C.     Lien Claims**

9.       <u>The Shippers and Warehousemen</u>.  To optimize their supply chain and distribution network and ensure the uninterrupted flow of products between and among their facilities and customers, the Debtors necessarily depend on an extensive shipping, warehousing and distribution network to move products and active pharmaceutical ingredients to and from their facilities and customers (the "<u>Shippers</u>").  The Debtors also rely on certain third-party warehousemen, distributors and logistics providers who store goods in transit on behalf of the Debtors (the "<u>Warehousemen</u>") to support the Debtors' distribution capabilities.  Among other things, the Shippers and Warehousemen manage the Debtors' distribution network and provide various customer service, warehousing, distribution, order management, contract administration, chargeback processing, accounts receivable management, cash applications, and financial management services related to the Debtors' products.  As a result, the Shippers and Warehousemen are regularly in possession of certain of the Debtors' products in the ordinary course of business.

10.      If the Debtors fail to pay the Shippers or Warehousemen for charges incurred in connection with the transportation and storage of the Debtors' property, various statutes, tariffs,

and agreements may permit the Shippers or Warehousemen to assert possessory liens against or otherwise exercise control over the Debtors' property in their possession. In addition, shipments may be stopped in transit or not released if customs duties are not paid by the Debtors or their customs agents when due in the ordinary course. The successful operation of the Debtors' business, and thus their ability to maximize the value of their assets, depends on their ability to process such goods.

11. _Other Potential Lienholders_. In addition to the Lien Claims of Shippers and Warehousemen the Debtors also from time to time transact business with a number of other third parties (collectively, the "Other Lien Claimants," and together with the Shippers and Warehousemen, the "Lienholders") who, under applicable non-bankruptcy law, may also have the potential to assert liens against the Debtors and their property if the Debtors fail to pay for goods or services rendered prior to the Petition Date. Such Other Lien Claimants may have provided equipment or performed various services for the Debtors, including (i) providing equipment and parts necessary for the operation of the Debtors' facilities and (ii) rendering essential services related to the operation of the Debtors' facilities, such as machine repair and maintenance.

12. As of the Petition Date, certain Other Lien Claimants may not have been paid in full for certain prepetition goods, equipment and services, which may result in such Other Lien Claimants asserting, and perfecting, statutory liens against the Debtors' facilities or the Debtors' goods or equipment, notwithstanding the automatic stay under section 362 of the Bankruptcy Code. Indeed, pursuant to section 362(b)(3) of the Bankruptcy Code, the act of perfecting such statutory liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay. _See_ 11 U.S.C. § 362(b)(3). Under section 546(b) of the Bankruptcy Code, a debtor's lien avoidance powers "are subject to any generally applicable law

that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection." 11 U.S.C. § 546(b)(1)(A).[3] Furthermore, certain Other Lien Claimants may refuse to perform ongoing services to the Debtors, including manufacturing, installation, repair, and servicing obligations, unless their claims are paid in full.

13.    If the Debtors are unable to pay the Lien Claims, they risk losing access to critical property, which could immediately and irreparably harm the Debtors to the detriment of all stakeholders.  Accordingly, the Debtors seek authority, in their discretion, to pay and discharge, on a case-by-case basis, the Lien Claims that the Debtors believe have created, or could give rise to, a lien against the Debtors' property, regardless of whether the related Lienholders have already perfected their interests, where the Debtors determine, in their reasonable business judgment, that such payment is in the best interests of the Debtors' estates.

14.    The Debtors estimate that, as of the Petition Date, the aggregate amount of the Critical Vendor Claims and the Lien Claims is approximately $1.1 million, $400,000 of which will be due within the first thirty (30) days of the Chapter 11 Cases.

## RELIEF REQUESTED

15.    By this Motion, the Debtors request the Court enter the Proposed Orders, (i) authorizing, but not directing, the Debtors, in their discretion, to pay Lien Claims and Critical Vendor Claims (each, a "Vendor Claim," and collectively, the "Vendor Claims") held by the Lienholders or Critical Vendors, (each a "Vendor" and collectively, the "Vendors") subject to the caps provided for in the Interim Order and the Final Order, as summarized immediately below,

---

[3]   The Debtors do not concede that any liens (contractual, common law, statutory or otherwise) described in this Motion are valid, and the Debtors expressly reserve the right to contest the extent, validity, and perfection of all such liens, and/or to seek avoidance thereof.

and (ii) authorizing the Banks to honor and process check and electronic transfer requests related thereto.

16.    The Debtors further request that they be authorized, but not required, in their discretion, to condition the payment of a Vendor Claim on the agreement of the Vendor to continue supplying goods and services to the Debtors on terms that are as or more favorable to the Debtors as the most favorable trade terms, practices, and programs in effect between the Vendor and the Debtors in the six (6) months prior to the Petition Date (collectively, the "Customary Trade Terms"), or such other trade terms as are agreed to by the Debtors and the Vendor.

17.    To the extent that the Debtors determine, in their business judgment and in consultation with the agents under the Debtors' postpetition credit facilities (the "DIP Agents"), to condition the payment of a Vendor Claim on the agreement of the Vendor to continue supplying goods and services to the Debtors on the Customary Trade Terms, the Debtors propose that a letter (a "Vendor Letter") be sent to the Vendor, along with a copy of any order granting this Motion (the "Vendor Order"), including, without limitation, the following terms:

a.    The amount of the Vendor's estimated prepetition claim, after accounting for any setoffs, other credits, and discounts thereto, shall be as mutually determined in good faith by the Vendor and the Debtors (but such amount shall be used only for purposes of the Vendor Order and shall not be deemed a claim allowed by the Court, and the rights of all parties in interest to object to such claim shall be fully preserved until further order of the Court);

b.    The amount and timing of any payment agreed to be paid in satisfaction of such estimated prepetition claim by the Debtors, subject to the terms and conditions set forth in the Vendor Order;

c.    The Vendor's agreement to provide goods and services to the Debtors based upon the Customary Trade Terms (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, normal product mix and availability, and other applicable terms and programs), or such other trade terms as are agreed to by the Debtors and the Vendor, and the Debtors' agreement to pay the Vendor in accordance with such terms;

d.    The Vendor's agreement not to file or otherwise assert against any of the Debtors, their estates or any of their respective assets or property (real or personal) any lien (a "Lien") (regardless of the statute or other legal authority upon which such Lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to the Vendor by the Debtors arising from goods and services provided to the Debtors prior to the Petition Date, and that, to the extent that the Vendor has previously obtained such a Lien, the Vendor shall immediately take all necessary actions to release such Lien;

e.    The Vendor's acknowledgment that it has reviewed the terms and provisions of the Vendor Order and consents to be bound thereby;

f.    The Vendor's agreement that it will not separately assert or otherwise seek payment of any reclamation claims; and

g.    If a Vendor that has received payment of a prepetition claim subsequently refuses to provide goods and services to the Debtors on Customary Trade Terms or such other trade terms as are agreed to by the Debtors and the Vendor, then, without the need for any further order of the Court, any payments received by the Vendor on account of such prepetition claim shall be deemed to have been in payment of any then outstanding postpetition obligations owed to such Vendor. The Debtors shall have the authority to file a motion to compel such Vendor to immediately repay to the Debtors any payments received on account of its prepetition claim to the extent that the aggregate amount of such payments exceed the postpetition obligations then outstanding to such Vendor, without the right of setoff, recoupment or reclamation. If the Court orders such Vendor to repay any such prepetition amounts, the Vendor's claim shall be reinstated as a prepetition claim in the Chapter 11 Cases and subject to the terms of any bar date order entered in the Chapter 11 Cases.

18.    Any such Vendor Letter, once agreed to by the Debtors and a Vendor, shall be the agreement between the parties that governs their postpetition trade relationship (the "Trade Agreement"). The Debtors request that they be authorized, but not required, in their discretion, to enter into Trade Agreements with the Vendors.

## BASIS FOR RELIEF

**A.**    **The Court Should Authorize, but not Direct, the Debtors, in Their Discretion, to Pay Vendor Claims.**

        **i.**    **The Vendors Are Essential to Avoiding Any Unexpected or Inopportune Interruption to the Debtors' Business Operations.**

19.     The Debtors believe that the goods and services provided by the Vendors are necessary to ensure that there are not any unexpected or inopportune interruptions to the Debtors' operations, because the Vendors are the most cost-efficient and, in many cases, the only source from which the Debtors can procure critical goods and services within a timeframe that would permit the Debtors to avoid unanticipated interruptions, delays or shutdowns in their operations. Any failure to pay the Vendor Claims would, in the Debtors' business judgment, result in the Vendors refusing to provide necessary goods and services to the Debtors.  Any unexpected or inopportune interruption, delay, or shutdown in the Debtors' operations resulting from a refusal by the Vendors to do business with the Debtors on a postpetition basis would have disastrous effects on the Debtors' business and undermine the Debtors' ability to preserve and maximize the value of their estates.

20.     As noted above, the Lienholders may assert and perfect possessory, construction, materialman's, mechanic's or other similar statutory liens on the Debtors' assets, thereby jeopardizing the Debtors' ability to prosecute the Chapter 11 Cases in a timely and efficient manner.

21.     With respect to the Critical Vendor Claims, the Debtors have reviewed their accounts payable and undertaken a process to identify those vendors that are essential to avoid any unexpected or inopportune interruptions to their operations.  The Debtors have further developed certain procedures that, if and when implemented, in their discretion and business judgment, will ensure that the Critical Vendors receiving payment of their Vendor Claims will continue to provide goods and services to the Debtors based upon the Customary Trade Terms, or such other trade terms as are agreed to by the Debtors and the Vendors.

22.     The Debtors believe that authority to pay Vendor Claims is vital to their efforts to preserve and maximize the value of their estates.  If the Proposed Orders are not entered, the Debtors believe that many of the Vendors will refuse to do business with the Debtors and some may have to cease their own operations.  Such a result would be damaging to the Debtors' efforts to successfully prosecute the Chapter 11 Cases, to the detriment of the Debtors' estates and creditors.  Moreover, the continued availability of trade credit in amounts and on terms consistent with the Debtors' prepetition trade terms is critical to the assumptions used to build the Debtors' debtor-in-possession financing budget.  The retention or reinstatement of the Customary Trade Terms will enable the Debtors to maximize the value of their business.  Conversely, a deterioration in postpetition trade credit available to the Debtors, together with a disruption in the Debtors' receipt of necessary goods and services, would, among other things, increase the amount of liquidity needed by the Debtors postpetition, and impede the Debtors' chapter 11 efforts.

23.     For the foregoing reasons, the Debtors respectfully submit that entry of the Proposed Orders is in the best interests of the Debtors, their estates, and creditors.

**ii.      The Relief Requested Herein Is Supported by the "Doctrine of Necessity."**

24.     Section 363(b)(1) of the Bankruptcy Code provides that, after notice and a hearing, the trustee "may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]"  11 U.S.C. § 363(b)(1).

25.     Section 105(a) of the Bankruptcy Code empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Bankruptcy courts have invoked the equitable power of section 105 of the Bankruptcy Code to authorize the postpetition payment of prepetition claims where such payment is necessary to preserve the value of a debtor's estate.  *See, e.g.*, *Tropical Sportswear Int'l Corp.*,

320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks."). Courts have likewise acknowledged that "[u]nder [section] 105, the court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989)); *see In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) (citing *In re Penn Central Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972)) (holding that the court is authorized under section 105(a) of the Bankruptcy Code to allow immediate payment of prepetition claims of vendors found to be critical to the debtor's continued operation).

26.    In a long line of well-established cases, federal courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g.*, *Miltenberger v. Logansport, C. & S. W. Ry. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim permitted to prevent "stoppage of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to [the commencement of the bankruptcy case] is essential to the continued operation of the . . . [business] during [the bankruptcy case], payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases).

27.    This legal principle—known as the "doctrine of necessity"—functions in chapter 11 cases as a mechanism by which a bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See Just for Feet*, 242 B.R. at 826 (finding that "to invoke the necessity of payment doctrine, a debtor must

show that payment of the prepetition claims is critical to the debtor's [continued operation]."); *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f payment of a prepetition claim is essential to the continued operation of [the debtor], payment may be authorized"); *In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation). The doctrine is frequently invoked early in a bankruptcy case, particularly in connection with those Bankruptcy Code sections that relate to payment of prepetition claims. In one case, the court indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of . . . payment of creditors in full or at least proportionately.'" *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S. D. Ohio 1988).

28.     As explained above, the goods and services provided by the Vendors are essential to ensure that there is not an unexpected or inopportune interruption to the operation of the Debtors' business. The relief requested herein is critical to the operation of the Debtors' business as the Debtors cannot operate without the cooperation and continued supply of goods and services by the Vendors. Simply put, the Debtors do not believe there are cost-effective or readily accessible alternatives to the Vendors.

29.     Accordingly, the Debtors submit that the Court should exercise its equitable power to grant the relief requested herein.

### iii.     The Court Should Authorize Payment of Vendor Claims as a Valid Exercise of the Debtors' Fiduciary Duties.

30.     Authority for satisfying Vendor Claims also may be found in sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors, operating their business as a debtor in possession

under sections 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

31.     Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.*  The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," *id.*, and also when the payment was to "sole suppliers of a given product." *Id.* at 498.  The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.*

32.     Payment of Vendor Claims meets each element of the *CoServ* court's standard.  As described above, the Debtors believe that the Vendor Claims encompass the claims of those vendors that are able to assert and perfect liens against the Debtors' property, are entitled to administrative priority claims that must be satisfied in full prior to any payments to pre-petition unsecured creditors (priority or general unsecured), or would otherwise refuse, or would be unwilling to, provide goods and services to the Debtors on a postpetition basis if their prepetition balances are not paid, thereby creating the significant risk that the Debtors will experience an

27131966.14

14

unexpected or inopportune interruption to their operations.  Any such interruption would diminish estate value and frustrate the Debtors' chapter 11 efforts.  The harm and economic disadvantage that would stem from the failure of any of the Vendors to perform is disproportionate to the amount of the Vendor Claims.

33.    Finally, the Debtors have examined other options short of payment of Vendor Claims and have determined that, to avoid an unexpected or inopportune interruption to their business operations, there exists no practical alternative to their payment of Vendor Claims. Therefore, the Debtors can only meet their fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code by payment of Vendor Claims.

### iv.    Payment of Certain Vendor Claims Now Will Not Adversely Affect Creditor Recoveries in the Chapter 11 Cases.

34.    Where the amounts owed to the Lienholders are less than the value of the goods that could be held to secure the related Lien Claims, such parties are arguably fully-secured creditors of the Debtors' estates.  Also, the Debtors believe that a substantial portion of Critical Vendor Claims may be entitled to administrative expense priority under section 503(b)(9) of the Bankruptcy Code given that the Debtors received much of the goods provided by the Critical Vendor, in the ordinary course of business, within the twenty-day period immediately prior to the Petition Date.  Because such claims are entitled to priority status under section 503(b)(9) of the Bankruptcy Code, they must be paid, in full, prior to payment of any other unsecured prepetition (priority or general unsecured) creditor.  Although section 503(b)(9) of the Bankruptcy Code does not specify a time for payment of these expenses, bankruptcy courts have the discretion to allow for distributions to administrative claimants outside of a chapter 11 plan if the debtor has the ability to pay and there is a need to pay.  Indeed, nothing in the Bankruptcy Code prohibits the Debtors

27131966.14

from paying such claims if they choose to do so, or the Court from exercising its discretion to authorize the postpetition payment of such obligations, immediately.

35.    As explained above, it is critical to the Debtors' chapter 11 efforts that they continue to receive goods and services, as applicable, from the Vendors on an uninterrupted basis throughout the chapter 11 process.  The Debtors believe that without the relief requested herein, many of the Vendors may cease delivering goods and providing services to the Debtors, which could have devastating consequences for the Debtors and their estates.

36.    As a result, the Debtors respectfully request authority (but not the direction) to pay such claims, in the ordinary course of business, during the pendency of the Chapter 11 Cases, to the extent necessary to preserve and maximize the value of their estates.

**B.**    **The Court Should Authorize the Banks to Honor and Process the Debtors' Payments on Account of Vendor Claims.**

37.    The Debtors also request the Court to authorize the Banks, when requested by the Debtors, in their discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations described herein, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Debtors further request that all of the Banks be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.

<u>**SATISFACTION OF BANKRUPTCY RULE 6003(b)**</u>

38.    Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), any motion seeking to use property of the estate pursuant to section 363 of the Bankruptcy Code or to satisfy prepetition claims within twenty-one days of the Petition Date requires the Debtors to demonstrate that such relief "is necessary to avoid immediate and

irreparable harm." The failure of any Vendor to deliver necessary goods and services to the Debtors would have immediate and detrimental consequences to the Debtors' business and would jeopardize the Debtors' efforts to preserve and maximize the value of their estates, to the detriment and prejudice of all of the Debtors' stakeholders. Moreover, it is the Debtors' business judgment that continuation of their positive relationship with the Vendors is critical to avoid any unexpected or inopportune interruption to their operations and increases the likelihood of successfully prosecuting the Chapter 11 Cases. Thus, if the relief requested herein is not granted, the Debtors' failure to satisfy Vendor Claims would cause the Debtors' estates immediate and irreparable harm by detracting from, and potentially derailing, the Debtors' chapter 11 efforts.

39.     For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

### **REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)**

40.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth throughout this Motion, any delay in paying Vendor Claims would be detrimental to the Debtors, their creditors, and estates, as the Debtors' ability to manage and run their business operations without any unexpected or inopportune interruption requires, in part, that they continue to receive the goods and services provided by the Vendors. For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Orders.

27131966.14

41.     To implement the foregoing immediately, the Debtors also respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a), to the extent they are applicable to the Proposed Orders.

## RESERVATION OF RIGHTS

42.     Nothing in the Proposed Orders or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors, (ii) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, or (iii) shall be construed as a promise to pay a claim.

## NOTICE

43.     Notice of this Motion has been or will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the thirty (30) largest unsecured claims on a consolidated basis against the Debtors; (iii) counsel for the First Lien Agent for the Debtors' prepetition secured lenders; (iv) counsel for the Second Lien Agent for the Debtors' prepetition secured lenders; (v) counsel for the DIP Agents; (vi) counsel to the Indenture Trustee for the Debtors' Series D zero-coupon Convertible Senior Notes due 2023; (vii) the Internal Revenue Service; (viii) the Securities and Exchange Commission; (ix) the Office of the United States Attorney for the District of Delaware; and (x) the Banks.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully entry of the Proposed Orders, granting the relief

requested herein and such other and further relief as is just and proper.

Dated:  October 14, 2021
       Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Shane M. Reil*

Michael R. Nestor (No. 3526)
Matthew B. Lunn (No. 4119)
Shane M. Reil (No. 6195)
S. Alexander Faris (No. 6278)
Betsy L. Feldman (No. 6410)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  mnestor@ycst.com
      mlunn@ycst.com
      sreil@ycst.com
      afaris@ycst.com
      bfeldman@ycst.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

27131966.14

19

**EXHIBIT A**

**Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TELIGENT, INC., *et al.*,[1] | Case No. 21-11332 (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. ___** |

### INTERIM ORDER, PURSUANT TO SECTIONS 105(a), 363(b), 503(b), 1107(a), AND 1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) LIENHOLDERS; (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO; AND (III) GRANTING CERTAIN RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of interim and final orders, pursuant to sections 105(a), 363(b), 503(b), 1107(a), and 1108 of title 11 of the Bankruptcy Code, (i) authorizing, but not directing, the Debtors, in their discretion, to pay, in the ordinary course of business, (a) Critical Vendor Claims and (b) Lien Claims, and (ii) authorizing the Banks to honor and process check and electronic transfer requests related to the foregoing; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and this Court having found that venue of the Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Teligent, Inc. (5758); Igen, Inc. (7443); Teligent Pharma, Inc. (1639); and TELIP LLC (8395).  The Debtors' corporate headquarters is located at 33 Wood Ave, 7th Floor, Iselin, NJ 08830.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Court having found that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given; and this Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and upon consideration of the First Day Declaration; and upon the record in the Chapter 11 Cases and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are authorized, but not directed, in their discretion, to pay, honor or otherwise satisfy prepetition Vendor Claims in the ordinary course of their business up to an aggregate amount of $400,000 on an interim basis, subject to the terms and conditions set forth in this Interim Order and the DIP Budget (as defined in the DIP Order (defined below)).

3.      Nothing in this Interim Order shall prejudice the Debtors' right to request authority to pay additional amounts on account of the Vendor Claims and the Debtors' right to seek such relief is expressly reserved.

4.      The Debtors are authorized, but not directed, in their discretion, to condition the payment of a Vendor Claim on the agreement of the Vendor to continue supplying goods and services to the Debtors on the Customary Trade Terms, or such other trade terms as are agreed to by the Debtors and the Vendor.

5.     The Debtors are authorized, but not directed, in consultation with the DIP Agents, to enter into Trade Agreements with the Vendors, including, without limitation, on the following terms:

    a.    The amount of the Vendor's estimated prepetition claim, after accounting for any setoffs, other credits, and discounts thereto, shall be as mutually determined in good faith by the Vendor and the Debtors (but such amount shall be used only for purposes of this Interim Order and shall not be deemed a claim allowed by this Court, and the rights of all parties in interest to object to such claim shall be fully preserved until further order of this Court);

    b.    The amount and timing of any payment agreed to be paid in satisfaction of such estimated prepetition claim by the Debtors, subject to the terms and conditions set forth in this Interim Order;

    c.    The Vendor's agreement to provide goods and services to the Debtors based upon the Customary Trade Terms (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, normal product mix and availability, and other applicable terms and programs), or such other trade terms as are agreed to by the Debtors and the Vendor, and the Debtors' agreement to pay the Vendor in accordance with such terms;

    d.    The Vendor's agreement not to file or otherwise assert against any of the Debtors, their estates or any of their respective assets or property (real or personal) any lien (a "Lien") (regardless of the statute or other legal authority upon which such Lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to the Vendor by the Debtors arising from goods and services provided to the Debtors prior to the Petition Date, and that, to the extent that the Vendor has previously obtained such a Lien, the Vendor shall immediately take all necessary actions to release such Lien;

    e.    The Vendor's acknowledgment that it has reviewed the terms and provisions of this Interim Order and consents to be bound thereby;

    f.    The Vendor's agreement that it will not separately assert or otherwise seek payment of any reclamation claims; and

    g.    If a Vendor that has received payment of a prepetition claim subsequently refuses to provide goods and services to the Debtors on Customary Trade Terms or such other trade terms as are agreed to by the Debtors and the Vendor, then, without the need for any further order of the Court, any

payments received by the Vendor on account of such prepetition claim shall be deemed to have been in payment of any then outstanding postpetition obligations owed to such Vendor. The Debtors shall have the authority to file a motion to compel such Vendor to immediately repay to the Debtors any payments received on account of its prepetition claim to the extent that the aggregate amount of such payments exceed the postpetition obligations then outstanding to such Vendor, without the right of setoff, recoupment or reclamation. If the Court orders such Vendor to repay any such prepetition amounts, the Vendor's claim shall be reinstated as a prepetition claim in the Chapter 11 Cases and subject to the terms of any bar date order entered in the Chapter 11 Cases.

6.     The Banks are authorized, when requested by the Debtors, in the Debtors' discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments. The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Interim Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Interim Order.

7.     A final hearing on the relief sought in the Motion shall be conducted on _____, 2021 at _____ (ET) (the "<u>Final Hearing</u>"). Any party-in-interest objecting to the relief sought at the Final Hearing or the Final Order shall file and serve a written objection, which objection shall be served upon (i) proposed counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, DE 19801 (Attn: Matthew B. Lunn, Esq. (mlunn@ycst.com) and Shane M. Reil, Esq. (sreil@ycst.com)); (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Room 2207, Wilmington, DE 19801 (Attn: Richard L. Schepacarter, Esq. (Richard.schepacarter@usdoj.gov) and David L. Buchbinder, Esq. (David.l.buchbinder@usdoj.gov)); (iii) co-counsel for the administrative agent and lenders

27131966.14

under the Debtors' prepetition first lien credit facility and DIP revolving credit facility, Latham & Watkins LLP, 355 South Grand Avenue, Suite 100, Los Angeles, CA 90071 (Attn: Ted A. Dillman, Esq. (ted.dillman@lw.com) and Jason R. Bosworth, Esq. (Jason.Bosworth@lw.com )); (iv) co-counsel for the administrative agent and lenders under the Debtors' prepetition second lien credit facility and DIP new money term loan facility, Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178 (Attn: Frederick F. Eisenbiegler, Esq. (frederick.eisenbiegler@morganlewis.com) and Kurt A. Mayr, Esq. (kurt.mayr@morganlewis.com)); (v) local counsel for the First Lien and Second Lien Agents for the Debtors' prepetition secured lenders, Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, DE 19899 (Attn:  Robert J. Dehney, Esq. (rdehney@morrisnichols.com)); (vi) counsel to the Indenture Trustee for the Debtors' Series D zero-coupon Convertible Senior Notes due 2023, Grushko & Mittman, P.C., 515 Rockaway Avenue, Valley Stream, NY 11581 (Attn: Edward M. Grushko, Esq. (Ed@grushkomittman.com)); and (vii) counsel to any statutory committee appointed in the Chapter 11 Cases, in each case so as to be received no later than _____, 2021 at 4:00 p.m. (ET).  If no objections to the entry of the Final Order are timely filed, this Court may enter the Final Order without further notice or a hearing.

8.    Nothing in this Interim Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors, (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, or (c) shall be construed as a promise to pay a claim.

9.      Payments made to pursuant to this Interim Order shall be applied, in the first instance, against claims which arise under section 503(b)(9) of the Bankruptcy Code ("503(b)(9) Claims"), in whole or in part as applicable.

10.     The Debtors shall maintain a matrix/schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Interim Order, including the following information: (a) the names of the payee; (b) the amount of the payment; (c) the category or type of payment, as further described and classified in the Motion; (d) the Debtor or Debtors that made the payment; and (e) the payment date.  The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee, counsel to the DIP Agents, and any statutory committee appointed in these chapter 11 cases, every 30 days beginning upon entry of this Interim Order.

11.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

12.     The requirements of Bankruptcy Rule 6003(b) are satisfied.

13.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be effective and enforceable immediately upon its entry.

14.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

15.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

27131966.14

**<u>EXHIBIT B</u>**

**Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TELIGENT, INC., *et al.*,[1] | Case No. 21-11332 (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. ___ & ___** |

**FINAL ORDER, PURSUANT TO SECTIONS 105(a), 363(b), 503(b), 1107(a), AND 1108
OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE DEBTORS TO PAY
CERTAIN PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND
(B) LIENHOLDERS; (II) AUTHORIZING BANKS TO HONOR AND PROCESS
CHECK AND ELECTRONIC TRANSFER REQUESTS
RELATED THERETO; AND (III) GRANTING CERTAIN RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and

debtors in possession (collectively, the "Debtors") for the entry of interim and final orders,

pursuant to sections 105(a), 363(b), 503(b), 1107(a), and 1108 of title 11 of the Bankruptcy Code,

(i) authorizing, but not directing, the Debtors, in their discretion, to pay, in the ordinary course of

business, (a) Critical Vendor Claims, and (b) Lien Claims, and (ii) authorizing the Banks to honor

and process check and electronic transfer requests related to the foregoing; and this Court having

found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the

*Amended Standing Order of Reference* from the United States District Court for the District of

Delaware dated as of February 29, 2012; and this Court having found that venue of the Chapter 11

Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this

Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Teligent, Inc. (5758); Igen, Inc. (7443); Teligent Pharma, Inc. (1639); and TELIP LLC (8395).  The Debtors' corporate headquarters is located at 33 Wood Ave, 7th Floor, Iselin, NJ 08830.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Court having found that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given; and this Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and upon consideration of the First Day Declaration; and upon the record in the Chapter 11 Cases and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and this Court having entered that certain *Interim Order, Pursuant to Sections 105(a), 363(b), 503(b), 1107(a), and 1108 of the Bankruptcy Code, (I) Authorizing the Debtors to Pay Certain Prepetition Claims of (A) Critical Vendors, and (B) Lienholders, (II) Authorizing Banks to Honor and Process Check and Electronic Transfer Requests Related Thereto; and (III) Granting Certain Related Relief* [D.I. ___]; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1. The Motion is GRANTED on a final basis as set forth herein.

2. The Debtors are authorized, but not directed, in their discretion, to pay, honor or otherwise satisfy prepetition Vendor Claims in the ordinary course of their business up to an aggregate amount of $1.1 million, subject to the DIP Budget (as defined in the DIP Order (defined below)).

3. Nothing in this Final Order shall prejudice the Debtors' right to request authority to pay additional amounts on account of Vendor Claims and the Debtors' right to seek such relief is expressly reserved.

27131966.14

4.      The Debtors are authorized, but not directed, in consultation with the DIP Agents, to condition the payment of a Vendor Claim on the agreement of the Vendor to continue supplying goods and services to the Debtors on the Customary Trade Terms, or such other trade terms as are agreed to by the Debtors and the Vendor.

5.      The Debtors are authorized, but not directed, in their discretion, to enter into Trade Agreements with the Vendors, including, without limitation, on the following terms:

a.      The amount of the Vendor's estimated prepetition claim, after accounting for any setoffs, other credits, and discounts thereto, shall be as mutually determined in good faith by the Vendor and the Debtors (but such amount shall be used only for purposes of this Final Order and shall not be deemed a claim allowed by this Court, and the rights of all parties in interest to object to such claim shall be fully preserved until further order of this Court);

b.      The amount and timing of any payment agreed to be paid in satisfaction of such estimated prepetition claim by the Debtors, subject to the terms and conditions set forth in this Final Order;

c.      The Vendor's agreement to provide goods and services to the Debtors based upon the Customary Trade Terms (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, normal product mix and availability, and other applicable terms and programs), or such other trade terms as are agreed to by the Debtors and the Vendor, and the Debtors' agreement to pay the Vendor in accordance with such terms;

d.      The Vendor's agreement not to file or otherwise assert against any of the Debtors, their estates or any of their respective assets or property (real or personal) any lien (a "Lien") (regardless of the statute or other legal authority upon which such Lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to the Vendor by the Debtors arising from goods and services provided to the Debtors prior to the Petition Date, and that, to the extent that the Vendor has previously obtained such a Lien, the Vendor shall immediately take all necessary actions to release such Lien;

e.      The Vendor's acknowledgment that it has reviewed the terms and provisions of this Final Order and consents to be bound thereby;

f.      The Vendor's agreement that it will not separately assert or otherwise seek payment of any reclamation claims; and

27131966.14

3

g.     If a Vendor that has received payment of a prepetition claim subsequently refuses to provide goods and services to the Debtors on Customary Trade Terms or such other trade terms as are agreed to by the Debtors and the Vendor, then, without the need for any further order of the Court, any payments received by the Vendor on account of such prepetition claim shall be deemed to have been in payment of any then outstanding postpetition obligations owed to such Vendor.  The Debtors shall have the authority to file a motion to compel such Vendor to immediately repay to the Debtors any payments received on account of its prepetition claim to the extent that the aggregate amount of such payments exceed the postpetition obligations then outstanding to such Vendor, without the right of setoff, recoupment or reclamation.  If the Court orders such Vendor to repay any such prepetition amounts, the Vendor's claim shall be reinstated as a prepetition claim in the Chapter 11 Cases and subject to the terms of any bar date order entered in the Chapter 11 Cases.

6.     The Banks are authorized, when requested by the Debtors, in the Debtors' discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Final Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Final Order.

7.     Nothing in this Final Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors, (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, or (c) shall be construed as a promise to pay a claim.

27131966.14

8.      Payments made to pursuant to this Final Order shall be applied, in the first instance, against claims which arise under section 503(b)(9) of the Bankruptcy Code ("503(b)(9) Claims"), in whole or in part as applicable.

9.      The Debtors shall maintain a matrix/schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Final Order, including the following information:  (a) the names of the payee; (b) the amount of the payment; (c) the category or type of payment, as further described and classified in the Motion; (d) the Debtor or Debtors that made the payment; and (e) the payment date.  The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee, counsel to the DIP Agents, and any statutory committee appointed in these chapter 11 cases, every 30 days beginning upon entry of the Interim Order.

10.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

11.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be effective and enforceable immediately upon its entry.

12.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.