## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| VJGJ, INC., *et al.*,[1] | Case No. 21-11332 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 689, 720, & 745** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF VJGJ, INC. AND ITS DEBTOR AFFILIATES

Upon consideration of the *Second Amended Joint Chapter 11 Plan of VJGJ, Inc. and Its Debtor Affiliates*, attached hereto as <u>Exhibit A</u> (together with all exhibits thereto, and as may be amended, modified or supplemented, the "<u>Plan</u>"), jointly proposed by the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") and the Official Committee of Unsecured Creditors (the "<u>Committee</u>") and dated as of July 7, 2022; and the Bankruptcy Court having approved, and the Debtors having filed the *Disclosure Statement for First Amended Joint Chapter 11 Plan of VJGJ, Inc. and Its Debtor Affiliates* [Docket No. 656] (the "<u>Disclosure Statement</u>," and the Bankruptcy Court having entered the order approving the Disclosure Statement [Docket No. 664], the "<u>Disclosure Statement Order</u>"); and the Debtors having filed the *Plan Supplement for the First Amended Joint Chapter 11 Plan of VJGJ, Inc. and Its Debtor Affiliates* [Docket No. 689], as supplemented by the *Notice of Filing of Supplement to Plan Supplement for the First Amended Joint Chapter 11 Plan of VJGJ, Inc. and its Debtor Affiliates* [Docket No. 745] and the *Notice of*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  VJGJ, Inc. (5758); WRCC, Inc. (7443); OSL, Inc. (1639); and TNova, LLC (8395).  The Debtors' mailing address is: c/o Portage Point Partners LLC, 300 North LaSalle Drive, #1420, Chicago, Illinois 60654.

*Filing of Revised Supplement to Plan Supplement for the Second Amended Joint Chapter 11 Plan of VJGJ, Inc. and its Debtor Affiliates* [Docket No. 821] (collectively, the "Plan Supplement"); and upon consideration of the affidavits of service filed reflecting compliance with the notice and solicitation requirements of the Disclosure Statement Order [Docket No. 686] (the "Notice Affidavit"); and upon the *Notice of Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of Ballots and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures; (IV) Shortening the (A) Notice Period for Parties to Object to Confirmation of the Plan, and (B) Notice of the Confirmation Hearing; and (V) Granting Related Relief* [Docket No. 665] and the *Notice to Equity Holders of Confirmation Hearing* [Docket No. 666] (together, the "Confirmation Hearing Notices"); and upon consideration of the *Declaration of Emily Young of Epiq Corporate Restructuring LLC Regarding Voting and Tabulation of Ballots Cast on First Amended Joint Chapter 11 Plan of VJGJ, Inc. and Its Debtor Affiliates* [Docket No. 717], filed with the Bankruptcy Court on May 23, 2022 (the "Voting Declaration"); and upon consideration of the *Declaration of Vladimir Kasparov in Support of Confirmation of the First Amended Joint Chapter 11 Plan of VJGJ, Inc. and Its Debtor Affiliates* [Docket No. 733], filed with the Bankruptcy Court on May 26, 2022 (the "Kasparov Declaration"); and any formal or informal objections to the Plan having been resolved and/or overruled by the Bankruptcy Court pursuant to this Confirmation Order; and hearings to consider Confirmation having been held on May 25, 2022 and July 7, 2022 (the "Confirmation Hearing"); and upon the evidence adduced and proffered and the arguments of counsel made at the Confirmation Hearing; and the Bankruptcy Court having reviewed all

documents in connection with Confirmation and having heard all parties desiring to be heard; and upon the record of the Chapter 11 Cases; and after due deliberation and consideration of all of the foregoing; and sufficient cause appearing therefor; the Bankruptcy Court hereby makes the following:

**Findings of Fact and Conclusions of Law**

A.    **Findings of Fact and Conclusions of Law.**  The findings and conclusions set forth herein, together with the findings of fact and conclusions of law set forth in the record of the Confirmation Hearing, constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to these proceedings pursuant to Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    **Capitalized Terms.**  Capitalized terms used herein, but not defined herein, shall have the respective meanings attributed to such terms in the Plan and the Disclosure Statement, as applicable.

C.    **Jurisdiction and Venue.**  The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution, and the Debtors consent to entry of this Confirmation Order under the Local Rules and Article III of the United States Constitution.  Venue of these proceedings and the Chapter 11 Cases is proper in this district and in this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**D.** **Chapter 11 Petitions.** On October 14, 2021 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors are authorized to continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 27, 2021, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee. *See* Docket No. 73. No trustee or an examiner has been appointed in the Chapter 11 Cases.

**E.** **Plan Supplement.** Prior to the Confirmation Hearing, the Debtors filed the Plan Supplement. The Plan Supplement complies with the terms of the Plan, and the filing and notice of the Plan Supplement was appropriate and complied with the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice is or shall be required. The Debtors are authorized to modify the Plan Supplement documents following entry of this Confirmation Order in a manner consistent with this Confirmation Order and the Plan.

**F.** **Mailing of Solicitation and Confirmation Materials.** As is evidenced by the Voting Declaration and the Notice Affidavits, the transmittal and service of the Plan, the Disclosure Statement, the Ballots, the Confirmation Hearing Notices and the notice of non-voting status (the "Notice of Non-Voting Status") were adequate and sufficient under the circumstances, and all parties required to be given notice of the Plan and the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan) have been given due, proper, timely, and adequate notice thereof in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, and such parties have had an opportunity to appear and be heard with respect

thereto.  Except as otherwise provided herein, no other or further notice of the Plan and the Confirmation Hearing is required.

**G.** **Voting.**  Votes on the Plan were solicited after disclosure of adequate information as defined in section 1125 of the Bankruptcy Code.  The procedures by which the Ballots for acceptance or rejection of the Plan were distributed and tabulated, including as set forth in the Voting Declaration, under the circumstances of the Chapter 11 Cases were fair, properly conducted, and complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable non-bankruptcy law and the Disclosure Statement Order.  As more fully set forth in the Voting Declaration, Classes 4 and 5, the only Voting Classes, voted to accept the Plan.

**H.** **Bankruptcy Rule 3016(a).**  In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors and the Committee as the proponents of the Plan.

**I.** **Burden of Proof.**  The Debtors and the Committee, as the proponents of the Plan, have met their burden of proving the satisfaction of the requirements for confirmation of the Plan set forth in section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard.  Further, each witness who testified on behalf of the Debtors at or in connection with (by declaration) the Confirmation Hearing was credible, reliable and qualified to testify as to the topic addressed in his or her testimony.

**J.** **Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**  As set forth below, the Plan complies with all of the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

**K.** **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).**  The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  In addition to Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Claims, which need

not be classified, the Plan designates seven (7) Classes of Claims and Interests. The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

L.    **Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).** Articles II and III of the Plan specify that Class 1 (Other Secured Claims), Class 2 (Priority Non-Tax Claims), and Class 3 (Prepetition First Lien Credit Agreement Claims) are Unimpaired under the Plan. Thus, section 1123(a)(2) of the Bankruptcy Code is satisfied.

M.    **Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).** Articles II and III of the Plan designate Class 4 (Prepetition Second Lien Credit Agreement Claims), Class 5 (General Unsecured Claims), Class 6 (Intercompany Claims), and Class 7 (Interests) as Impaired and specifies the treatment of Claims and Interests in such Classes. Thus, section 1123(a)(3) of the Bankruptcy Code is satisfied.

N.    **No Discrimination (11 U.S.C. § 1123(a)(4)).** The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest. Thus, section 1123(a)(4) of the Bankruptcy Code is satisfied.

O.    **Implementation of the Plan (11 U.S.C. § 1123(a)(5)).** The Plan, including, without limitation, the provisions of Article V thereof, and the Plan Administrator Agreement,

provide adequate and proper means for the Plan's implementation. Thus, section 1123(a)(5) of the Bankruptcy Code is satisfied.

P. **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).** The Plan does not provide for the issuance of any securities, including non-voting securities, and the Debtors are being dissolved on or after the Effective Date as provided for in the Plan. Therefore, section 1123(a)(6) of the Bankruptcy Code is satisfied.

Q. **Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).** Section 5 of the Plan provides for the appointment of a Plan Administrator, who will serve as a fiduciary of the Debtors' Estates and the Post-Effective Date Debtors, and who shall be empowered to, among other things, in accordance with the Plan and Plan Administrator Agreement, (i) execute all instruments and documents necessary to make Distributions to Holders of Allowed Claims; (ii) employ, retain or replace professionals to represent him or her with respect to his or her responsibilities; (iii) review and object to Claims as provided in the Plan, and prosecute such objections; (iv) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment or allowance of any Claim that was not previously Allowed under the Plan or an order of the Bankruptcy Court; (v) establish, replenish or release any reserves as provided in the Plan, as applicable; (vi) file applicable tax returns for the Debtors; (ix) liquidate any of the Assets; and (x) subject to approval by the Plan Oversight Committee, prosecute, compromise, resolve or withdraw any of the Retained Causes of Action. The Plan Administrator was selected by the Committee and Ares Capital in accordance with the Plan. Successors, if any, shall be selected pursuant to the procedures set forth in the Plan Administrator Agreement. Section 5.6 of the Plan also provides for the creation and function of the Plan Oversight Committee, which shall, among other things, instruct and supervise the Plan Administrator with respect to its responsibilities under

the Plan and the Plan Administrator Agreement. Two of the three Plan Oversight Committee Members were selected by the Committee and one was selected by the Ares Capital. The foregoing is consistent with the interest of holders of Claims and holders of Interests and with public policy and therefore, section 1123(a)(7) of the Bankruptcy Code is satisfied.

**R.** **Additional Plan Provisions (11 U.S.C. § 1123(b)).** The Plan's provisions are appropriate, in the best interests of the Debtors and the Estates, and consistent with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

**S.** **Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).** The Debtors have exercised appropriate business judgment in determining to reject the Debtors' remaining executory contracts and unexpired leases as provided for in the Plan and this Confirmation Order, and any such rejections are justified and appropriate in the Chapter 11 Cases.

**T.** **Compromises and Settlements Under and in Connection with the Plan (11 U.S.C. § 1123(b)(3)).** The settlements and compromises pursuant to and in connection with the Plan, the Ares Settlement and the Hikma Settlement, comply with and satisfy the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. The Ares Settlement and the Hikma Settlement are reasonable, designed to achieve a beneficial and efficient resolution of the Chapter 11 Cases for all parties-in-interest, and a sound exercise of the Debtors' business judgment and in the best interest of the Estates. Accordingly, the Ares Settlement and the Hikma Settlement, and the mutual releases provided under the Hikma Settlement, the Ares Settlement, and the Plan, constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant the Hikma Settlement and the Ares Settlement. Each component of the Ares Settlement and Hikma Settlement, including without limitation (i) the release, exculpation, and injunction provisions of the Plan, (ii) the distribution of all Cash, whether at the Debtors or the

Debtors' non-debtor affiliates, after reserving for the agreed amounts in the Professional Fee Reserve and the Confirmation Reserves (each as limited by and solely in amounts consistent with the Supplemental Budget), the Ares Settlement Payment, and the Additional ARCC Settlement Payment (as defined below), to Ares Capital and the Second Lien Lenders on and after the Effective Date, and (iii) the mutual releases provided under the Hikma Settlement and the Ares Settlement, is an integral part of the development and implementation of the Plan.

U.     Based upon the representations and arguments of counsel to the Debtors and other interested parties, including the Committee, with respect to Confirmation, all other testimony either actually given or proffered in connection with Confirmation, including, without limitation, the Voting Declaration, and the Kasparov Declaration, other evidence introduced at the Confirmation Hearing, and the full record of the Chapter 11 Cases, this Confirmation Order constitutes the Bankruptcy Court's approval of the Ares Settlement and the Hikma Settlement, respectively, because, among other things: (a) the Ares Settlement and the Hikma Settlement each reflect a reasonable balance between the possible success of litigation with respect to each of the settled claims and disputes, on the one hand, and the benefits of fully and finally resolving such claims and disputes and allowing the Debtors to liquidate and distribute their Assets and wind down the Chapter 11 Cases in a timely and efficient manner, on the other hand; (b) absent the Ares Settlement and the Hikma Settlement, there was a likelihood of complex and protracted litigation, and the attendant risk, expense, inconvenience, and delay was likely to derail the Debtors' liquidation and wind-down efforts; (c) the Ares Settlement and the Hikma Settlement provide significant value to the Debtors' Estates, favorably resolve and avoid potential litigation, thereby preserving value for the Debtors' stakeholders, and enable the prompt and efficient wind-down of the Debtors' Estates, and, absent such settlements, including the Ares Settlement Payment and the

payment of all remaining cash amounts whether at the Debtors or the Debtors' non-debtor affiliates to the Second Lien Lenders on the Effective Date, after payment or reservation of Cash necessary to fund the Professional Fee Reserve, the Confirmation Reserves, and the Ares Settlement Payment, and the mutual releases provided under the respective settlements, there is a substantial likelihood that significantly less value would be available for Allowed Claims; (d) each of the parties supporting the Ares Settlement and the Hikma Settlement are represented by counsel; (e) the Ares Settlement and the Hikma Settlement are the product of arm's-length bargaining and good faith negotiations among sophisticated parties; and (f) the Ares Settlement and the Hikma Settlement are, respectively, in the best interests of the Debtors, their Estates, holders of Claims and Interests, and other parties-in-interest, and are fair, equitable, and reasonable. Based on the foregoing, the Ares Settlement and the Hikma Settlement each satisfy the requirements of applicable Third Circuit law for approval of settlements and compromises pursuant to Bankruptcy Rule 9019.

V. **Releases, Exculpations, and Injunctions (11 U.S.C. § 1123(b))**. Under the facts and circumstances of the Chapter 11 Cases, the releases given by the Debtors pursuant to Section 11.11(a) of the Plan (the "Debtor Releases") are: (i) within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334; (ii) an appropriate exercise of the Debtors' business judgment; (iii) integral elements of the transactions incorporated into the Plan and inextricably bound with the other provisions of the Plan; (iv) given in exchange for good and valuable consideration provided by the Released Parties; (v) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests that are Releasing Parties; (vi) fair, equitable, and reasonable; and (vii) consistent with sections 105, 1123, and 1129 of the Bankruptcy Code. Each non-Debtor Released Party that will benefit from the Debtor Releases either shares an identity of interest with the

Debtors, was instrumental to the success of the Chapter 11 Cases, and/or provided a substantial contribution to the Debtors, which value provided a significant benefit to the Estates. Among other things, the DIP Parties provided post-petition financing under the DIP Documents to fund the Chapter 11 Cases and the Prepetition Secured Parties consented to the use of their cash collateral permitting the Debtors to pursue confirmation of the Plan and agreed to the Ares Settlement Payment for the benefit of other unsecured creditors. Further, the releases by Holders of Claims set forth in Section 11.11(b) of the Plan (the "Third-Party Releases") are: (i) within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334; (ii) given and made after due notice and an opportunity to object and be heard with respect thereto, as the Disclosure Statement, the Confirmation Hearing Notices, the Voting Instructions, the Ballots, and the Notice of Non-Voting Status each unambiguously state that (a) the Plan contains certain release, exculpation, and injunction provisions and (b) affected parties may object to or opt out of the Third-Party Releases, and therefore such releases are consensual; (iii) are consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code and other applicable law; and (iv) a bar to any of the Releasing Parties asserting any released claim against any of the Released Parties as and to the extent provided for in the Plan and this Confirmation Order. In addition, the exculpation and limitation of liability provisions set forth in Section 11.12 of the Plan (the "Exculpation") are essential to the Plan. The record in the Chapter 11 Cases fully supports the Exculpation, which is appropriately tailored to protect the Exculpated Parties, each of whom is a fiduciary of the Debtors' estates. In light of, among other things, the critical nature of the Exculpation to the Plan and the substantial contribution of the Exculpated Parties to the Chapter 11 Cases, the Exculpation is appropriate.

**W.     Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**  Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Debtors have complied with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1122, 1123, 1124, 1125, and 1126 of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order governing notice, disclosure, and solicitation in connection with the Plan, the Disclosure Statement, the Plan Supplement, and all other matters considered by the Bankruptcy Court in connection with Confirmation.

**X.     Debtors' Modifications to the Plan (11 U.S.C. § 1127(a)).**  The Debtors have proposed certain modifications to the Plan in good faith, and the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, thereby satisfying section 1127(a) of the Bankruptcy Code.

**Y.     Plan Proposed in Good Faith and Not by Means Forbidden by Law (11 U.S.C. § 1129(a)(3)).**  The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation.  The Plan is the result of extensive arm's-length negotiations among the Debtors, the Committee, the Prepetition Secured Parties, and other key stakeholders in the Chapter 11 Cases, and is supported by the Debtors' creditors and other parties in interest in the Chapter 11 Cases.

**Z.     Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**  The procedures set forth in the Plan for the Bankruptcy Court's approval of fees, costs, and expenses to be paid in connection with the Chapter 11 Cases, or in connection with the Plan and incident to

the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**AA.    Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**  Section 5.3.1 of the Plan provides that, on the Effective Date, the Debtors' officers, directors, and managers shall be terminated automatically.  The Committee and Ares Capital selected the Plan Administrator and the Plan Oversight Committee Members, and the Plan Administrator's and Plan Oversight Committee Members' identity and affiliation are set forth herein.  Thus, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

**BB.    No Rate Changes (11 U.S.C. § 1129(a)(6)).**  The Plan does not provide for any rate change that requires regulatory approval.  Section 1129(a)(6) of the Bankruptcy Code is thus not applicable.

**CC.    Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**  The "best interests" test is satisfied as to all Impaired Classes under the Plan, as each Holder of a Claim or Interest in such Impaired Classes either consented to their treatment or will receive or retain property of a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code, as demonstrated by the Liquidation Analysis attached as Exhibit B to the Disclosure Statement.

**DD.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**  Class 1 (Other Secured Claims), Class 2 (Priority Non-Tax Claims), and Class 3 (Prepetition First Lien Credit Agreement Claims) are unimpaired under the Plan, and Classes 4 (Prepetition Second Lien Credit Agreement Claims) and 5 (General Unsecured Claims) have voted to accept the Plan in accordance with the Bankruptcy Code, thereby satisfying section 1129(a)(8) as to those Classes.  However, Class 6 (Intercompany Claims) and Class 7 (Interests) are deemed to have rejected the Plan pursuant to

section 1126(g) of the Bankruptcy Code. Accordingly, section 1129(a)(8) of the Bankruptcy Code has not and cannot be satisfied. The Plan, however, is still confirmable because it satisfies the nonconsensual confirmation provisions of section 1129(b) of the Bankruptcy Code, as set forth below.

**EE.** **Treatment of Administrative, Professional Fee, Priority Tax Claims, and DIP Claims (11 U.S.C. § 1129(a)(9)).** The treatment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Claims pursuant to Article II of the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

**FF.** **Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).** Class 4 (Prepetition Second Lien Credit Agreement Claims) and Class 5 (General Unsecured Claims) are the only Impaired Classes of Claims entitled to vote and voted to accept the Plan, determined without including any acceptance of the Plan by any insider. Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied.

**GG.** **Feasibility (11 U.S.C. § 1129(a)(11)).** The Plan provides for the appointment of the Plan Administrator and a Plan Oversight Committee to, among other things, oversee implementation of the Plan and Distributions to Holders of Allowed Claims. Following implementation of the Plan, the administration and distribution of the Debtors' Assets in accordance with the terms of the Plan, and the winding down of the Post-Effective Date Debtors' affairs, without the need for any further order or action of the Bankruptcy Court, the Post-Effective Date Debtors will be dissolved. Thus, section 1129(a)(11) of the Bankruptcy Code is satisfied.

**HH.** **Payment of Fees (11 U.S.C. § 1129(a)(12)).** All fees payable under 28 U.S.C. § 1930 have been paid or will be paid on or before the Effective Date pursuant to the Plan, thus satisfying section 1129(a)(12) of the Bankruptcy Code.

II.     **Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(13)–(16)).** Sections 1129(a)(13)–(16) of the Bankruptcy Code are inapplicable to Confirmation, as the Debtors: (i) do not provide "retiree benefits," as defined in section 1114 of the Bankruptcy Code (§ 1129(a)(13)); (ii) have no domestic support obligations (§ 1129(a)(14)); (iii) are not individuals (§ 1129(a)(15)); and (iv) are not nonprofit corporations (§ 1129(a)(16)).

JJ.     **No Unfair Discrimination; Fair and Equitable Treatment (11 U.S.C. § 1129(b)).** The classification and treatment of Claims and Interests in Class 6 (Intercompany Claims) and Class 7 (Interests), which are deemed to have rejected the Plan, is proper pursuant to section 1122 of the Bankruptcy Code, does not discriminate unfairly, and is fair and equitable pursuant to section 1129(b)(1) of the Bankruptcy Code. There is no Class of Claims or Interests junior to the Holders of Claims in Class 6 or Interests in Class 7 that will receive or retain property under the Plan on account of their Claims or Interests. Accordingly, the Plan does not violate the absolute priority rule, does not discriminate unfairly, and is fair and equitable with respect to each Class that is deemed to have rejected the Plan. Thus, the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to Class 6 and Class 7.

KK.     **Only One Plan (11 U.S.C. § 1129(c)).** The Plan is the only chapter 11 plan currently proposed in the Chapter 11 Cases, and section 1129(c) of the Bankruptcy Code is therefore satisfied.

LL.     **Principal Purpose (11 U.S.C. § 1129(d)).** The principal purpose of the Plan is neither the avoidance of taxes, nor the avoidance of the application of section 5 of the Securities Act of 1933, and no governmental unit has objected to Confirmation on any such grounds. Accordingly, section 1129(d) of the Bankruptcy Code is inapplicable.

MM.     **Satisfaction of Confirmation Requirements.** Based upon the foregoing, the Plan

satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code, and should be confirmed.

NN.     **Good Faith Solicitation (11 U.S.C. § 1125(e)).**  The Debtors and their officers, directors, employees, advisors, Professionals, and agents have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and they are entitled to the benefits and protections afforded by section 1125(e) of the Bankruptcy Code and the injunction and exculpation provisions set forth in Article XI of the Plan and in this Confirmation Order.

OO.     **Retention of Jurisdiction.**  The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article X of the Plan and section 1142 of the Bankruptcy Code.

**Based upon the foregoing findings, and upon the record made before the Bankruptcy Court in connection with the Confirmation Hearing, and good and sufficient cause appearing therefor, it is hereby ORDERED, ADJUDGED AND DECREED THAT:**

<u>**Confirmation of the Plan**</u>

1.     The Plan, attached hereto as <u>Exhibit A</u>, as and to the extent modified by this Confirmation Order, is approved and confirmed pursuant to section 1129 of the Bankruptcy Code. All ancillary Plan documents necessary for implementing the Plan, including those in the Plan Supplement, are approved.  Any objections to the Plan not otherwise withdrawn, resolved, or otherwise disposed of are overruled and denied.

## Compromises and Settlements Under the Plan

2.      Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, upon the Effective Date, all settlements and compromises set forth in the Plan, including the Ares Settlement and the Hikma Settlement, are approved in all respects, and constitute good faith compromises and settlements.

## Classification and Treatment

3.      The Plan's classification scheme is approved.  The classifications set forth on the Ballots:  (i) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (ii) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for Distribution purposes; (iii) may not be relied upon by any Holder as representing the actual classification of such Claim under the Plan for Distribution purposes; and (iv) shall not be binding on the Debtors, the Plan Administrator, or any Holders of Claims against the Debtors, except for Plan voting purposes.

## Authorization to Implement the Plan

4.      Pursuant to section 1142(b) of the Bankruptcy Code, section 303 of the Delaware General Corporation Law and any comparable provisions of the business corporation or similar laws, the Debtors, the Post-Effective Date Debtors, and the Plan Administrator, as applicable, are authorized to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan, and to execute, enter into or otherwise make effective all documents arising in connection therewith prior to, on, and after the Effective Date.

5.      On the Effective Date, the Debtors and, thereafter, the Plan Administrator, are authorized to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith, in  the case of the Plan Administrator, in the name of and on behalf of the

Debtors or the Post-Effective Date Debtors, as applicable, in accordance with the terms of the Plan and this Confirmation Order.

6. The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of the Debtors, the Post-Effective Date Debtors or the Plan Administrator to take any and all actions necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

## Enforceability of the Plan

7. Pursuant to sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code, subject to the occurrence of the Effective Date, the Plan and all Plan-related settlements and documents shall be, and hereby are, valid, binding and enforceable.

## Vesting of Assets

8. Except as otherwise provided in the Plan, on and after the Effective Date, all Assets of the Estates (other than the Second Lien Distribution Amount), including all claims, rights, Retained Causes of Action and any property acquired by the Debtors under or in connection with the Plan, shall vest in the Post-Effective Date Debtors free and clear of all Claims, Liens, charges, other encumbrances, and Interests, subject to the substantive consolidation provided for in the Plan. For the avoidance of doubt, the Second Lien Distribution Amount shall not vest in the Post-Effective Date Debtors and, after reservation of Cash necessary to fund the Professional Fee Reserve and the Confirmation Reserves (each as limited by and solely in amounts consistent with the Supplemental Budget), the Ares Settlement Payment, and the Additional ARCC Settlement Payment, all Cash, on hand whether at the Debtors or the Debtors' non-debtor affiliates, shall be paid by the Debtors to Ares Capital and the Second Lien Lenders on the Effective Date. Other amounts constituting the Second Lien Distribution Amount shall be paid to Ares Capital and the

Second Lien Lenders promptly by the Plan Administrator as they become available after the Effective Date.

## Preservation of Retained Causes of Action

9.      Except as expressly provided in the Plan or this Confirmation Order: (i) in accordance with section 1123(b)(3) of the Bankruptcy Code, the Post-Effective Date Debtors shall retain all Retained Causes of Action and nothing contained in the Plan or this Confirmation Order shall be deemed to be a release, waiver or relinquishment of any such Retained Causes of Action; and (ii) the Post-Effective Date Debtors or the Plan Administrator, as applicable, shall have, retain, reserve and be entitled to assert all such Retained Causes of Action as fully as if the Chapter 11 Cases had not been commenced, and all of the Post-Effective Date Debtors' legal and equitable rights respecting any Claim that are not specifically waived or relinquished by the Plan, this Confirmation Order, or any Final Order (including settlement or other agreements authorized thereby) may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

## Reservation of Causes of Action

10.     Unless a Retained Cause of Action against a Holder or other Person or Entity is expressly waived, relinquished, released, compromised or settled in the Plan, the Confirmation Order or any Final Order, the Debtors, the Estates and the Post-Effective Date Debtors expressly reserve such Retained Cause of Action for later adjudication by the Post-Effective Date Debtors, including, without limitation, Retained Causes of Action of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist.  Therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel

(judicial, equitable or otherwise), laches or the like shall apply to such Retained Causes of Action upon or after the entry of this Confirmation Order or Effective Date based on the Disclosure Statement, the Plan, or this Confirmation Order, except where such Retained Causes of Action have been expressly waived, relinquished, released, compromised or settled in the Plan, this Confirmation Order, a Final Order of the Bankruptcy Court or, following the Effective Date, in a written agreement duly executed by the Post-Effective Date Debtors, which agreement, by its terms, is not subject to Bankruptcy Court approval.

### Wind-Up and Dissolution of the Debtors

11.     On the Effective Date, the Plan Administrator shall be the sole director, officer, or manager, as applicable, of the Post-Effective Date Debtors and appointed to manage the Post-Effective Date Debtors, in accordance with the Plan and the Plan Administrator Agreement. Following the implementation of the Plan, the administration and distribution of the Debtors' Assets in accordance with the terms of the Plan, and the winding down of the Post-Effective Date Debtors' affairs, without the need for any further order or action of the Bankruptcy Court, the Post-Effective Date Debtors will be dissolved and their affairs will be wound up in accordance with applicable state law. The Plan Administrator is authorized to take all actions reasonably necessary to dissolve the Post-Effective Date Debtors, and neither the Plan Administrator nor the Post-Effective Date Debtors shall be required to pay any taxes or fees in order to cause such dissolution and termination of the Post-Effective Date Debtors' existence.

## Cancellation of Interests

12.     On the Effective Date, all Interests of any kind shall be deemed cancelled, and the Holders thereof shall not receive or retain any property, interest in property or consideration under the Plan on account of such Interests.

## Substantive Consolidation

13.     Except as otherwise provided in the Plan, each Debtor shall continue to maintain its separate corporate existence after the Effective Date for all purposes, other than the treatment of Claims and Distributions under the Plan.  Except as expressly provided in the Plan (or as otherwise ordered by the Bankruptcy Court), on the Effective Date for purposes of Distributions: (i) the Assets and liabilities of the Debtors shall be deemed merged or treated as though they were merged into and with the Assets and liabilities of Debtor VJGJ, Inc.; (ii) all guaranties of the Debtors of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any Claim against any Debtor, and any guarantee thereof executed by any Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of Debtor VJGJ, Inc.; (iii) each and every Claim filed or to be filed in any of the Chapter 11 Cases shall be treated as filed against the consolidated Debtors and shall be treated as one Claim against and obligation of VJGJ, Inc.; (iv) all Intercompany Claims shall be eliminated and extinguished, and holders of Intercompany Claims shall not receive any Distributions or retain any property pursuant to the Plan on account of such Intercompany Claims; and (v) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity, VJGJ, Inc., so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of any of the other Debtors.  Such substantive consolidation shall not (other than for purposes relating to the Plan) affect the legal

and corporate structures of the Post-Effective Date Debtors. Moreover, such substantive consolidation shall not affect any subordination provisions set forth in any agreement relating to any Claim or Interest or the ability of the Post-Effective Date Debtors to seek to have any Claim or Interest subordinated in accordance with any contractual rights or equitable principles. Notwithstanding anything in this section to the contrary, all post-Effective Date fees payable to the U.S. Trustee pursuant to U.S.C. § 1930, if any, shall be calculated on a separate legal entity basis for each Post-Effective Date Debtor.

**Plan Distributions**

14. The Plan Administrator or its designee, on behalf of the Post-Effective Date Debtors, shall serve as the disbursing agent under the Plan with respect to Distributions to Holders of Allowed Claims (provided that the Post-Effective Date Debtors or the Plan Administrator may hire professionals or consultants to assist with making Distributions, subject to the Plan Administrator Agreement). The Post-Effective Date Debtors shall make all Distributions required to be made to such Holders of Allowed Claims pursuant to the Plan, the Confirmation Order and the Plan Administrator Agreement. The Post-Effective Date Debtors shall not be required to give any bond or surety or other security for the performance of the Plan Administrator's duties as disbursing agent unless otherwise ordered by the Bankruptcy Court.

15. Except as otherwise provided by the Plan, this Confirmation Order or as ordered by the Bankruptcy Court, all Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the initial distribution date by the Post-Effective Date Debtors. Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to the terms and conditions of the Plan and the Plan Administrator Agreement. No Distribution shall be made on account of, without limitation, any Allowed Claim or portion thereof that (i) has been satisfied after the Petition Date; (ii) is listed in the Schedules as

contingent, unliquidated, disputed or in a zero amount, and for which a proof of claim has not been timely filed; or (iii) is evidenced by a proof of claim that has been amended by a subsequently filed proof of claim.

16.     Except to the extent provided in section 506(b) of the Bankruptcy Code, the Plan, or this Confirmation Order, post-petition interest, penalties or fees shall not accrue or be paid on Allowed Claims, and no Holder of an Allowed Claim shall be entitled to interest accruing on any Allowed Claim from and after the Petition Date.

## Implementation of the Plan and the Plan Administrator

17.     The Plan Administrator Agreement, substantially in the form filed with the Plan Supplement, is hereby approved.

18.     The appointment of Alfred Giuliano as the Plan Administrator is hereby approved. The Plan Administrator shall be compensated in the manner set forth in and consistent with the Plan and the Plan Administrator Agreement. The Plan Administrator shall have all powers, rights, duties and protections afforded the Plan Administrator under the Plan, this Confirmation Order, and the Plan Administrator Agreement.

19.     The formation of the Plan Oversight Committee is hereby approved. The appointment of the Plan Oversight Committee Chairperson, Schuyler Carroll, acting as a representative of Walgreen Company, is hereby approved. The initial members of the Plan Oversight Committee are Adam Ferrarini, acting as a representative of Ares Capital (appointed by Ares Capital), Schuyler Carroll, acting as a representative of Walgreen Company (appointed by the Committee), and Ben Carlsen, acting as a representative of McKesson Corporation (appointed by the Committee).

## Executory Contracts and Unexpired Leases

20.     On the Effective Date, all executory contracts and unexpired leases of the Debtors that have not been assumed, assumed and assigned, or rejected, prior to the Effective Date, or are not subject to a motion to assume or reject Filed before the Effective Date, shall be deemed rejected pursuant to this Confirmation Order, as of the Effective Date, other than the Insurance Contracts and any post-petition consulting or transition services agreements.

21.     **Any Creditor asserting a Rejection Claim shall File a proof of claim with the Debtors' claims and noticing agent, Epiq Corporate Restructuring, LLC, in accordance with the Plan, within thirty (30) days of the Effective Date, and shall also serve such proof of claim upon the Plan Administrator.**

22.     **Any Rejection Claims arising from the Plan that are not timely Filed pursuant to Section 6.1 of the Plan shall be forever disallowed and barred.  If one or more Rejection Claims are timely filed, the Plan Administrator may file an objection to any Rejection Claim on or prior to the Claim Objection Deadline**.

## Disputed Claims

23.     Except as otherwise specifically provided in the Plan, this Confirmation Order and the Plan Administrator Agreement, after the Effective Date, the Post-Effective Date Debtors shall have the authority (i) to file, withdraw, or litigate to judgment objections to Claims; (ii) to settle, compromise, or Allow any Claim or Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; (iii) to amend the Schedules in accordance with the Bankruptcy Code; and (iv) to administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  Any agreement entered into by the Post-Effective Date Debtors in accordance

with the terms of the Plan and this Confirmation Order with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim.

24.     All objections to Claims (other than (i) Administrative Claims and (ii) Professional Fee Claims, which Professional Fee Claims shall be governed by Section 11.2 of the Plan) shall be Filed on or before the Claim Objection Deadline, which date may be extended by the Bankruptcy Court upon a motion filed by the Post-Effective Date Debtors on or before the Claim Objection Deadline with notice only to those parties entitled to notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 as of the filing of such motion. The Filing of a motion to extend the Claim Objection Deadline shall automatically extend the Claim Objection Deadline until a final order is entered by the Bankruptcy Court. In the event that such a motion to extend the Claim Objection Deadline is denied, the Claim Objection Deadline shall be the later of the then-current Claim Objection Deadline (as previously extended, if applicable) or thirty (30) days after entry of a Final Order denying the motion to extend the Claim Objection Deadline.

## Administrative Claims

25.     **All requests for payment of an Administrative Claim (other than a Section 503(b)(9) Claim) arising on or after the Petition Date must be Filed with the Bankruptcy Court and served on counsel to the Plan Administrator and counsel to the U.S. Trustee no later than thirty (30) days after the Effective Date.** In the event of an objection to allowance of an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

## Professional Fee Claims

26.     **All final requests for payment of Professional Fee Claims pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code must be made by application Filed with this Bankruptcy Court and served on counsel to the Plan Administrator, counsel to the**

**Post-Effective Date Debtors, counsel to the Second Lien Lenders, and the U.S. Trustee no later than thirty (30) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to such applications must be Filed and served on counsel to the Plan Administrator, counsel to the Post-Effective Date Debtors, counsel to the Committee, counsel to the Second Lien Lenders, the U.S. Trustee, and the requesting Professional on or before the date that is fourteen (14) days after the date on which the applicable application was served (or such longer period as may be allowed by Order of the Bankruptcy Court or by agreement with the requesting Professional).**

27.     All Professional Fee Claims shall be paid by the Estates to the extent approved by Order of the Bankruptcy Court within five (5) Business Days from entry of such Order; provided, that, Professional Fee Claims of the Debtors' Professionals shall not exceed the amounts set forth in the Supplemental Budget for such fees. On or before the Effective Date, the Debtors shall establish the Professional Fee Reserve in an amount consistent with the Supplemental Budget, which shall be held by Young Conaway Stargatt & Taylor, LLP and shall only be used to pay Professional Fee Claims of the Debtors' Professionals. Professional Fee Claims of the Committee's Professionals shall be paid by the Post-Effective Date Debtors out of the proceeds of the GUC Distribution.

<u>**Release, Injunction, Exculpation and Related Provisions**</u>

28.     The release, injunction, exculpation, and related provisions set forth in Article XI of the Plan are hereby approved and authorized in their entirety, and such provisions are effective and binding on all Persons and Entities as and to the extent provided for therein.

<u>**Payment of Statutory Fees**</u>

29.     All fees payable pursuant to section 1930 of title 28 of the United States Code prior to the Effective Date shall be paid on or before the Effective Date. All such fees that arise after

29345822.4

the Effective Date shall be paid by the Estates, the Post-Effective Date Debtors and the Plan Administrator in the ordinary course. The Post-Effective Date Debtors and the Plan Administrator shall have the obligation to pay quarterly fees to the Office of the United States Trustee pursuant to section 1930 of title 28 of the United States Code until the Chapter 11 Cases are closed, dismissed or converted. Notwithstanding anything to the contrary in the Plan, the U.S. Trustee shall not be required to file any proofs of claim with respect to quarterly fees payable pursuant to section 1930 of title 28 of the United States Code.

### Dissolution of the Committee

30.     On the Effective Date, the Committee shall dissolve and all members, ex officio members, employees, attorneys, financial advisors, other Professionals or other agents thereof shall be released from all rights and duties arising from or related to the Chapter 11 Cases or the Plan and its implementation, and the retention or employment of the Committee's attorneys and financial advisors and other agents shall terminate, *provided, however*, that the Committee shall continue in existence and its Professionals shall continue to be retained with respect to (i) Committee professional applications Filed or to be Filed pursuant to sections 330 and 331 of the Bankruptcy Code and (ii) any appeals of this Confirmation Order.

### Termination of the Challenge Period

31.     The stipulations, admissions, waivers, releases, acknowledgements, indemnities, and other provisions applicable to the DIP Parties, Prepetition Secured Parties, Prepetition First Lien Credit Agreement Claims and the Prepetition Second Lien Credit Agreement Claims set forth in the Final DIP Order which are final with respect to all Persons, including all Holders of Claims and Interests, Creditors, Committee members, and all other parties in interest, shall be final as to the Committee and its members, in their capacity as such.

### Notice of Entry of Confirmation Order and Effective Date

32.     Pursuant to Bankruptcy Rules 2002 and 3020(c), the Debtors shall serve a notice of entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form attached hereto as <u>Exhibit B</u> (the "<u>Notice of Confirmation and Effective Date</u>"), no later than five (5) Business Days after the Effective Date, on all Holders of Claims against or Interests in the Debtors and all other Persons on whom the Confirmation Hearing Notice was served.  The form of the Notice of Confirmation and Effective Date is hereby approved in all respects.  The Notice of Confirmation and Effective Date shall constitute good and sufficient notice of the entry of this Confirmation Order and of the relief granted herein, including, without limitation, the rejection of executory contracts and unexpired leases as provided for in the Plan and this Confirmation Order, and any bar dates and deadlines established under the Plan and this Confirmation Order, and no other or further notice of the entry of this Confirmation Order, the occurrence of the Effective Date and any such bar dates and deadlines need be given.

### Retention of Jurisdiction

33.     Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases, this Confirmation Order, and the Plan to the fullest extent permitted by law, including, among other things, to take the actions specified in Article X of the Plan and in this Confirmation Order.

### References to Plan Provisions

34.     The failure specifically to include or to refer to any particular article, section, or provision of the Plan or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, and such article, section, or provision

shall have the same validity, binding effect, and enforceability as every other article, section, or provision of the Plan, it being the intent of the Bankruptcy Court that the Plan (as and to the extent modified by this Confirmation Order) be confirmed in its entirety.

## Rules Governing Conflicts Between Documents

35.     In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement or any agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence; *provided, however*, that this Confirmation Order shall control and take precedence in the event of any inconsistency between this Confirmation Order, any provision of the Plan, and any of the foregoing documents.

## Extension of Injunctions and Stays

36.     Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (including any injunctions or stays contained in or arising from the Plan or this Confirmation Order), shall remain in full force and effect.

## Section 1146 Exemption

37.     Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated by the Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or any similar tax or fee.

## Reservations of Rights

38.     **United States of America.**  Nothing in this Order, the Plan, the Plan Supplement, or any other implementing or supplementing Plan documents (collectively, the foregoing are

referred to as the "Plan Documents") discharges, releases, precludes, or enjoins: (i) any liability to the United States that is not a Claim; (ii) any Claim of the United States arising on or after the Effective Date; or (iii) any liability to a Governmental Unit on the part of any non-Debtor. Nor shall anything in the Plan Documents enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the first sentence of this paragraph and nothing in the Plan Documents divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret the Plan Documents or to adjudicate any defense asserted under the Plan Documents.

39.     **Indemnification Rights of Directors and Officers**.   Each of the Debtors' indemnification provisions in place as of the Effective Date, whether in the Debtors' bylaws, certificates of incorporation, operating agreements, other formation documents, board resolutions, management or indemnification agreements, employment contracts, or otherwise, for the Debtors' current officers, directors, and LLC managers, along with Philip Yachmetz, the Debtors' former Chief Legal Officer and Timothy Sawyer, the Debtors' former Chief Executive Officer, and any employees, attorneys, other professionals, and agents of the Debtors (the "Indemnification Provisions") shall survive the Effective Date.

40.     Notwithstanding anything contained in this Confirmation Order or the Plan to the contrary, including the releases contained in Section 11.11 of the Plan, neither the Plan nor this Confirmation Order shall in any way release, affect or impair any rights that the Debtors' current officers, directors, and LLC managers, along with Philip Yachmetz, the Debtors' former Chief Legal Officer and Timothy Sawyer, the Debtors' former Chief Executive Officer, may have under any directors and officers liability insurance policy, including any Claim against the Debtors under

the Indemnification Provisions that is subject to coverage under the applicable directors and officers liability insurance policy.

41. **DIP Claims**. As set forth in Section 3.1.4 of the Plan, all of the Debtors' contingent and unliquidated obligations under the DIP Documents and the Final DIP Order, including the DIP Parties' rights to indemnification from the Debtors, are hereby preserved; *provided, however*, that in no event shall any DIP Claims be paid from or attach to the proceeds of the Ares Settlement Payment.

42. **Terminating Debtor Professionals.** On the Effective Date, the engagement of each Professional retained by the Debtors shall be terminated without further order of the Bankruptcy Court; *provided, however*, such Professional shall be entitled to prosecute their respective Professional Fee Claims.

## Administrative Claims Reserve

43. Notwithstanding anything to the contrary herein or in the Plan, the GUC Distribution shall be subject to a $375,000 reserve (the "Recall Reserve") for Allowed Administrative Claims on account of postpetition sales of product not sold pursuant to a prepetition contract and not sold on an "as is / where is" basis and affected by a product recall (the "Postpetition Product Claims"). Following the final determination and (to the extent Allowed) satisfaction of all Postpetition Product Claims, including the KeySource Claim (as defined below), any excess in the Recall Reserve shall be distributed as part of the GUC Distribution; *provided, however*, that the Recall Reserve minus the aggregate amount of all pending Postpetition Product Claims, including the KeySource Claim, may be distributed as part of the GUC Distribution following the Administrative Claims Bar Date, subject to Paragraph 44 below. The amount reserved for the Supplemental Budget (and corresponding Confirmation Reserves) shall be

increased by $50,000 (the "<u>Additional ARCC Settlement Payment</u>"). The Additional ARCC Settlement Payment, which shall be included in the Confirmation Reserves, shall be used solely for the purpose of satisfying any Allowed Administrative Claim of KeySource Acquisition, LLC ("<u>KeySource</u>," and such claim, the "<u>KeySource Claim</u>") to the extent of any shortfall in the amount reserved for "Priority / Unknown Administrative Reserve / 503(b)(9)" in the Supplemental Budget. To the extent the KeySource Claim is Allowed, the first $100,000 of the Allowed amount of the KeySource Claim shall be satisfied from the Confirmation Reserves. If the KeySource Claim is Allowed in an amount greater than $100,000, the balance of such Allowed KeySource Claim shall be satisfied from the Recall Reserve. Also, to the extent the KeySource Claim is Allowed, the Allowed KeySource Claim shall be fully satisfied no later than thirty (30) days after the KeySource Claim is Allowed.

44.     Should the Plan Administrator seek to make a distribution from the Recall Reserve to a party other the KeySource while the KeySource Claim is not subject to a Final Order and, if Allowed in whole or in part, has not been satisfied in full (a "<u>Proposed Recall Reserve Distribution</u>"), the Plan Administrator shall file with the Bankruptcy Court a notice of the proposed Recall Reserve Distribution specifying (a) the proposed recipient(s) of the distribution and their counsel, if any, including contact information, (b) the amount of the distribution, and (c) the reason for the distribution. The Plan Administrator shall contemporaneously serve a copy of the notice on KeySource's counsel by email. Should KeySource not file an objection to the Proposed Recall Reserve Distribution within fourteen (14) days after service of the notice (or such longer time as agreed between KeySource and the Plan Administrator), the Plan Administrator may make the Proposed Recall Reserve Distribution as identified in the notice. Should KeySource file an

objection, the Plan Administrator shall not make the Proposed Recall Reserve Distribution absent an order of the Bankruptcy Court.

45.     Other than amounts reserved under (i) the Confirmation Reserves and the Professional Fee Reserve, each as limited by and solely in amounts consistent with the Supplemental Budget, (ii) the Ares Settlement Payment and (iii) the Additional ARCC Settlement Payment, neither Ares Capital nor the Second Lien Lenders shall have any further obligation to fund, and no Cash Collateral or portion of the Second Lien Distribution Amount shall be used to fund any additional amounts whether in connection with the Plan, these Cases or otherwise, nor shall any claims or amounts attach to the Second Lien Distribution Amount which shall be held in trust for the benefit of Ares Capital and the Second Lien Lenders.

## McKesson Corporation

46.     McKesson Corporation's election to opt-out of the Third Party Releases is hereby deemed effective, and McKesson shall not be deemed a Releasing Party, as defined in section 1.109 of the Plan, and it and its Related Parties shall not be deemed Released Parties, as defined in section 1.107 of the Plan, notwithstanding the fact that its Ballot purporting to reject the Plan and opt-out of the Third-Party Releases was not actually received by the Voting Agent until after the Voting Deadline.

## Headings

47.     Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

## No Stay of Confirmation Order

48.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h), and 7062 and any other Bankruptcy Rule to the contrary, to the extent applicable, there is no reason for delay in the implementation of this Confirmation Order and, thus, this Confirmation Order shall be effective and enforceable immediately upon entry.

**Dated: July 15th, 2022**
**Wilmington, Delaware**

**BRENDAN L. SHANNON**
**UNITED STATES BANKRUPTCY JUDGE**

29345822.4